STAVROULA D. KIOUSIS, Plaintiff-appellee v. STEVEN G. KIOUSIS, YPEROCHOS KIOUSIS, KIKI KIOUSIS and TRENDEX, INC., Defendants-appellants

COA97-1191

(Filed 18 August 1998)

**1. Contracts— quantum meruit—directed verdict—implied-in-fact theory remaining**

The trial court correctly allowed plaintiff to go to the jury under an implied-in-fact contract theory after granting defendants' motion for directed verdict where plaintiff's counsel had stated that he was proceeding on the theory that the parties' conduct manifested an "implicit agreement" to share equally in their corporation and was not seeking quasi-contract relief or any remedy based on unjust enrichment, and the court granted defendants' motion as it pertained to "what is traditionally known as implied contract, where the only remedy would be quantum meruit."

**2. Contracts— implied-in-fact—sufficiency of evidence**

There was sufficient evidence of an implied-in-fact contract to share in the ownership of a business to withstand defendants'

motions for a directed verdict and judgment notwithstanding the verdict where plaintiff contributed both her personal savings and an enormous amount of time and effort when the business began; she did not seek payment for her services as club manager because she assumed that the parties would be splitting the profits; the evidence showed that plaintiff and defendant-Steven Kiousis had mutually agreed that plaintiff would run the business in exchange for defendant's financial assistance; Steven testified that he and plaintiff had decided to put any profits back into the club or to use them as a family; there was testimony that they had written numerous checks on the business account to pay for their personal needs; and the record indicates that the couple mutually agreed to incorporate the health club for the sole purpose of insulating themselves from liability. The fact that the couple had no discussion concerning ownership of the corporation is not relevant to the theory that an implicit agreement existed.

**3. Contracts— instructions—breach of contract—establishment of ownership interest in business**

The trial court did not err by not giving a breach of contract instruction in an action to establish plaintiff's ownership interest in a business. The fact that plaintiff sought to establish her ownership interest by way of a contract theory does not warrant an instruction on breach absent an allegation that a breach occurred.

Appeal by defendants-appellants from judgment entered 13 February 1997 by Judge C. Christopher Bean in Dare County District Court. Heard in the Court of Appeals 30 April 1998.

*The Twiford Law Firm, L.L.P., by Edward A. O'Neal, for defendants-appellants.*

*Trimpi and Nash, by John G. Trimpi, for plaintiff-appellee.*

WYNN, Judge.

Unlike an express contract, a contract implied-in-fact exists by virtue of the parties' conduct, rather than by an explicit set of words. *Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 312 S.E.2d 215 (1984). Because the evidence in this case raised a question of fact as to whether an implied-in-fact agreement existed between Stavroula and Steven Kiousis to share equally in the ownership of Trendex, Inc., we affirm the trial court's denial of defendants'

motions for directed verdict and judgment notwithstanding the verdict. Further, we hold that the trial court correctly denied defendants' request to instruct the jury on the issue of a breach of contract; accordingly, we affirm the trial court's judgment declaring Stavroula Kiousis to be a 50% owner of Trendex, Inc.

The facts and procedural information pertinent to this appeal indicate that prior to their marriage in November 1987, Stavroula and Steven Kiousis decided to form a women's only health club named "Fitness Plus." The club opened for business in October 1987, with Stavroula carrying on the daily responsibility of running the facility and Steven, along with his parents, Yperochos and Kiki, acting as the club's chief financial investors.

About three months after opening Fitness Plus, the couple, fearing potential liability for accidents occurring on the club's premises, decided to incorporate their business under the name "Trendex, Inc." At that time, Stavroula was made an officer and director of Trendex with Steven, unbeknownst to Stavroula, owning all 100 shares of the corporation. According to Stavroula, she had no idea at the time of incorporation that Steven owned all the stock in Trendex as she assumed that she and her husband had a 50/50 arrangement.

Less than a year after being married, the couple separated and Stavroula filed a complaint against Steven for equitable distribution of the business, subsequently amending that complaint to add as defendants Steven's parents and Trendex, Inc. Still later, she again amended her complaint, seeking, *inter alia*, a judgment declaring her 50% owner of Trendex, Inc. In answering, defendants denied all allegations and moved for summary judgment, alleging that Steven was the sole owner of Trendex, Inc. at the time of its incorporation. The trial court granted defendants' motion holding "that at all times relevant to this litigation, plaintiff is the owner of no shares of stock in Trendex, Inc." In a subsequent bench trial, the trial court also dismissed Stavroula's equitable distribution claim.

In Stavroula's prior appeal to this Court, we affirmed the trial court's equitable distribution ruling but reversed the grant of summary judgment because "the facts and circumstances . . . reveal[ed] a genuine issue of material fact as to whether the parties entered into an implicit agreement whereby each would share in the ownership of Trendex, Inc." Following that appeal, the parties to this case proceeded to trial on the issue of whether Steven and Stavroula contracted to share equally in Trendex, Inc.

At trial, defendants moved for a directed verdict after the presentation of Stavroula's evidence and again after the close of all the evidence. The trial court, however, denied both motions and the jury returned a verdict favoring Stavroula. Defendant then moved for a judgment notwithstanding the verdict and for a new trial, but both motions were denied by the court. Thereafter, the trial court entered judgment declaring that "[p]laintiff and defendant Steven Kiousis each owned an equal interest in Trendex, Inc . . . ." From that judgment, Steven Kiousis and the other named defendants bring this appeal.

I.

**[1]** Defendants first contend that Stavroula failed to offer sufficient proof that she and Steven contracted to share equally in the ownership of Trendex, Inc. We disagree.

To survive a motion for a directed verdict, the non-moving party must present sufficient evidence to sustain a jury verdict in his favor or he must offer sufficient evidence to present a question for the jury. *Best v. Duke University*, 337 N.C. 742, 749, 448 S.E.2d 506, 510 (1994) (quoting *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991)). In determining the sufficiency of the non-moving party's evidence, all conflicts in the evidence are to be resolved in the non-moving party's favor. *West v. Slick*, 313 N.C. 33, 40, 326 S.E.2d 601, 605 (1985). A motion for a judgment notwithstanding the verdict is granted only if appears that the motion for a directed verdict could have been properly granted. *See* N.C. Gen. Stat. § 1A-1, Rule 50(b)(1). Because such a motion is, in essence, a renewal of the movant's prerequisite motion for a directed verdict, the standard of review used in determining the propriety of a motion for a directed verdict is the same standard to be used in reviewing the propriety of a motion for a judgment notwithstanding the verdict. *Ables v. Renfro*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993).

In the present case, defendants contend that the trial court erroneously allowed Stavroula's case to go to the jury because it allowed their motion for a directed verdict on the issue of an "implied contract theory" and Stavroula presented no evidence regarding the existence of an express contract—the only other contract theory by which they contend her case could have proceeded. In response, Stavroula argues that the trial court granted defendants' motion for a directed verdict only as it related to the issue of an implied-in-law contract theory, not as it related to an implied-in-fact contract theory.

KIOUSIS v. KIOUSIS

[130 N.C. App. 569 (1998)]

Consequently, she argues that since the evidence sufficiently showed the existence of an implied-in-fact contract to share equally in the ownership of Trendex, Inc., the trial court properly allowed that issue to go before the jury. Based upon our review of the hearings transcript, we agree with Stavroula's recitation of the trial court's ruling.

According to the transcript, during oral arguments on defendants' motions for directed verdicts, Stavroula's counsel informed the trial court that he was proceeding with his client's case on the theory that the parties' conduct manifested an "implicit agreement" to share equally in Trendex, Inc. and that his client was not seeking any quasi-contract relief or any other remedy based upon a theory of unjust enrichment. Considering that information, the trial court then granted defendants' motion as it pertained only to "what is traditionally known as implied contract, [that is,] where the only remedy would be quantum meruit." In light of this ruling, we conclude that the trial court correctly allowed Stavroula to proceed under an implied-in-fact contract theory.

Having resolved this procedural issue, we must now determine whether the evidence presented at trial was in fact sufficient to take Stavroula's case to the jury on the implied-in-fact contract theory.

[2] An implied-in-fact contract exists by virtue of the parties' conduct, rather than in any explicit set of words. *Ellis Jones, Inc.,* 66 N.C. App. at 646, 312 S.E.2d at 218. However, although its terms may not be expressed in words, or at least not fully in words, the legal effect of an implied in fact contract is the same as that of an express contract in that it too is considered a "real" contract or genuine agreement between the parties. *Id.* at 645-46, 312 S.E.2d at 217-18.

The record in this case shows that Stavroula presented sufficient evidence to take her case to the jury on the ground that an implied-in-fact contract existed between her and her husband to share equally in the ownership of Trendex. Inc. First, the evidence at trial tended to show that Steven and Stavroula Kiousis mutually agreed, upon the formation of Fitness Plus, that Stavroula would run the business in exchange for Steven's financial assistance. For example, when asked who was considered the owner of Fitness Plus when the couple began their business, Steven testified as follows:

> The—ideas when we started Fitness Plus was that [Stavroula] was going to run and operate the businesses—the business of Fitness Plus. That was going to be her business and I was going

to be the financial investor in that business. And by being the financial investor I would want some kind of return for my investment. And, I mean, we were planning on getting married, so the return would have been as husband and wife. This was our business. This was something that we could have for—we could have ourselves.

Further, when asked about the sharing of profits, Steven also testified that when formulating the idea for Fitness Plus, both he and Stavroula decided that "whatever profits were made would either be put back into the club or used by the two of [them] as a family." In fact, according to the testimony of both Steven and Stavroula, the couple wrote numerous checks on the Trendex, Inc. business account to pay for their personal needs and expenses, including household utility bills.

Second, the record also indicates that the couple mutually agreed to incorporate Fitness Plus for the sole purpose of insulating themselves from liability in the event that someone got hurt on the club's premises. As Steven testified:

We incorporated Trendex to run the Fitness Plus Health Club for really one reason only, and that was to limit the liability that we would have in the event that someone would have an accident . . . So, what we wanted to do as a unit, the two of us, was to incorporate and limit our personal liability to the—the person that was coming in there and exercising.

In response, defendants argue that the couple's decision to incorporate Fitness Plus does not imply a mutual agreement on their part to share equally in the ownership of Trendex, Inc. as the only discussion the couple had concerning Stavroula's ownership interest was that she would at some point in time share in the ownership of Fitness Plus. There was never any discussion, they contend, regarding Stavroula's present or future ownership interest in Trendex, Inc. This argument is without merit.

To begin, the fact that the couple had no discussion concerning ownership of Trendex, Inc. is not relevant to Stavroula's theory that an implicit agreement existed between her and her husband. An implied-in-fact contract is an agreement manifested by way of the parties' conduct, not by the expression of any set of spoken words. Moreover, the record reveals that when the couple made the decision to incorporate, Fitness Plus was the name by which Trendex, Inc. did

KIOUSIS v. KIOUSIS

[130 N.C. App. 569 (1998)]

business. Thus, while at the time of the trial Trendex, Inc. was made up of several enterprises other than Fitness Plus, at the time of its incorporation, Fitness Plus and Trendex, Inc. were considered one and the same entity. As Steven Kiousis acknowledged at trial, "Fitness Plus was Trendex; Trendex was Fitness Plus period."

Finally, the evidence at trial showed that when the business first started, Stavroula contributed both her personal savings to Fitness Club, around $6,000.00 to her best recollection, as well as an enormous amount of her time and effort. Her contributions included such things as personally guaranteeing the lease on the club; choosing the name and location of the club; obtaining the proper permits and appropriate equipment to be used in the club; and exclusively managing the club, including hiring and firing personnel and establishing and maintaining the club's financial accounts. In addition, the record indicates that Stavroula did not seek payment for her services as club manager because she assumed that the parties "would be splitting the profits anyway." Considering this evidence—along with the testimony we have already noted—we conclude that the jury in this case could have reasonably inferred that although there was no express agreement between the parties to share equally in Trendex, Inc., the parties nonetheless intended, as manifested by their conduct, to establish a joint enterprise when they formed their health club business and when they later decided to incorporate that business. Accordingly, we hold that evidence in this case, when viewed in the light most favorable to Stavroula, was sufficient to withstand defendants' motions for a directed verdict and their motion for a judgment notwithstanding the verdict on the issue of the existence of a contract between the parties.

II.

[3] Next, defendants argue that if there was sufficient evidence to take Stavroula's case to the jury on the implied-in-fact theory, then the trial court erred by denying their request for a breach of contract instruction. We disagree.

A new trial should not be granted unless there is a reasonable probability that the outcome of the case would be materially more favorable to the appellant. *Johnson v. Health*, 240 N.C. 255, 258, 81 S.E.2d 657, 659-60 (1954). Here, the issue of whether Steven breached the contract between him and his wife is immaterial because this case is not a breach of contract case. In her complaint, Stavroula did not seek a rescission of the contract or even monetary damages;

rather, she sought to have herself declared 50% owner of Trendex, Inc. Thus, the fact that she sought to establish her ownership interest by way of a contract theory does not warrant an instruction on the issue of a breach absent an allegation by Stavroula that a breach indeed occurred and that she is thereby entitled to contractual relief. Accordingly, we find no merit in defendants' argument that the jury should have been instructed to determine whether Steven Kiousis breached the contract between him and his wife.

In conclusion, we note that contrary to defendants' assertion in their brief, the fact that the trial court in this case was not called upon to determine the rights of the parties under a specific agreement does not render Stavroula's prayer for declaratory relief inappropriate. As our Supreme Court held in *Penley v. Penley*, 314 N.C. 1, 25, 332 S.E.2d 51, 65 (1985),"[w]hile most of the cases seeking a declaratory judgment involve written agreements, this [is] not a requirement where, pursuant to G.S. 1-256, 'a judgment or decree will terminate the controversy or remove an uncertainty.' "

For the reasons discussed herein, we therefore hold that the trial court correctly entered judgment declaring Stavroula Kiousis and her husband Steven Kiousis to "each own an equal interest in Trendex, Inc." Accordingly, the judgment below is,

Affirmed.

Judges MARTIN, John C. and WALKER concur.