JACOB E. MILES, ET AL., PLAINTIFFS V. CAROLINA FOREST ASSOCIATION, DEFENDANT

No. COA03-1329

(Filed 16 November 2004)

**Contracts; Deeds— implied in fact contract—assessments for maintenance of common areas and roads in subdivision**

The trial court did not err by directing verdict (more properly a motion to involuntarily dismiss under N.C.G.S. § 1A-1, Rule 41(b) for a nonjury trial) in favor of defendant subdivision asso-ciation based on its conclusion that an implied in fact contract existed between defendant and plaintiffs, the owners of undevel-oped subdivision lots, for plaintiffs to pay fees and assessments for maintenance, upkeep and operation of the roads, common areas, and recreational facilities within the subdivision, because: (1) contrary to plaintiffs' assertion, an implied contract does not breathe new life into the pertinent expired covenant, but instead the terms of the expired covenant evidence the terms of an implied contract; (2) the statute of frauds was not implicated in this instance as no interest in land was at issue since the implied contract claim is one for services rendered pursuant to an agree-ment with these plaintiffs; (3) plaintiffs' conduct was consistent with the existence of a contract implied in fact when plaintiffs were assessed specific fees for benefits to their unimproved properties, these benefits protected both the access to and the value of their properties, plaintiffs were on clear notice that these

benefits were being incurred and approximately half of the plaintiffs actually voted for the amendments which included consent to pay the assessment fees for the exact benefits at issue in this case, and plaintiffs' attempt to stop payment on these known benefits without more is tantamount to breach of that contract; and (4) any issue concerning whether the value of the services rendered as damages was adequately assessed and attributed to plaintiffs was not before the Court of Appeals for review.

Appeal by plaintiffs from judgment entered 2 June 2003 by Judge Russell G. Walker, Jr., in Montgomery County Superior Court. Heard in the Court of Appeals 16 June 2004.

*Fisher Clinard & Cornwell, P.L.L.C., by Shane T. Stutts, for plaintiff appellants.*

*Hill, Evans, Duncan, Jordan, & Beatty, P.L.L.C., by Karl N. Hill, Jr., for defendant appellee.*

McCULLOUGH, Judge.

This case arose out of a dispute between a subdivision association, Carolina Forest Association ("CFA"), and owners of undeveloped property in the subdivision ("plaintiffs"). CFA, by way of counterclaim, sought payments of certain fees and assessments they contended were agreed to by plaintiffs, and which were to be used for improvements to common areas and roads in the subdivision. Plaintiffs objected to paying such fees and assessments, believing themselves neither bound to do so under the law or in equity. The parties waived trial by jury.

The underlying facts are these: On 1 June 1970, the land development company Russwood, Incorporated ("Russwood") prepared covenants and restrictions (the "declarations") to run with Carolina Forest Subdivision, a gated community developed in Montgomery County. These declarations were recorded on 8 July 1970 and included the requirement that each lot owner maintain membership in and abide by the rules of Carolina Forest Association, Inc. The declarations contain the following paragraph which limited the duration of the covenants and restrictions to 1 January 1990:

10. These restrictions and covenants run with the land, and shall bind the PURCHASERS, their heirs, executors, administrators, personal representatives and assigns, and if any of them shall vio-

late or attempt to violate any of the covenants or restrictions herein contained, it shall be lawful for any person(s) or corporation(s) owning any such lots in the sub-division to prosecute any proceedings at law or in equity against those violating or attempting to violate any such covenants or restrictions and either to prevent him, them or it from doing so, or to recover damages for such violation. All of the restrictions, conditions, covenants and agreements contained herein shall continue until January 1, 1990, except that they may be changed, altered, amended or revoked in whole or in part by the record owners of the lots in the sub-division whenever the individual and corporate record owners of at least 2/3 of the said platted lots so agree in writing. Provided, . however, that no changes shall be made which might violate the purposes set forth in Restrictions No. 1 [limiting lots to residential purposes generally] and No. 8 [providing a perpetual easement and rights of ingress and egress for utility lines]. Any invalidation of any one of these covenants and restrictions shall in no way affect any other of the provisions thereof which shall hereafter remain in full force and effect.

Russwood then conveyed certain land, rights and obligations to CFA by deed which was recorded on 16 August 1973. CFA then sold Carolina Forest lots under these declarations to plaintiffs at various times.

As 1 January 1990 approached, CFA requested plaintiffs' consent in writing to amend declaration No. 10 to extend beyond its expiration. Of the 906 lots in the subdivision, 618 of the Carolina Forest lot owners agreed to the amendments. Approximately half of plaintiffs voted in favor of the amendment to extend the declarations. In 1997 and 1998, because some of the lot owners did not pay assessments, CFA voided some of the plaintiffs' gate cards which prevented access to the subdivision. Plaintiffs initiated this action against CFA seeking (1) declaratory judgment regarding their rights and obligations as lot owners; and (2) an injunction to prohibit levying fees and assessments and to allow access to the subdivision and common areas. CFA moved to dismiss these claims under the theory that plaintiffs were bound by the declarations as amended.

The first judgment rendered in the case, certified for appellate review, granted partial summary judgment in favor of plaintiffs. In that order, the trial court divided plaintiffs into two categories. In the first category were those plaintiffs to whom the amendments applied and against whom fees and assessments could be enforced. This cat-

egory of plaintiffs was comprised of two subsets: in the first subset were those plaintiffs who voluntarily consented in writing to declaration No. 10 as amended and extended, as these parties were estopped from claiming otherwise; and in the second subset were those plaintiffs who purchased their lots at a point in time after which their deeds expressly referred to the covenants and restrictions. The claims of these two subsets of plaintiffs were dismissed.

In the second category of plaintiffs were lot owners who did not consent to the amendments to declaration No. 10, and did not receive deeds which placed them on notice of the covenants and restrictions. The court allowed the claims of these plaintiffs to go forward. However, the court found that this second category of plaintiffs was bound by an implied in fact contract with CFA, which required them to pay fees for maintenance, repair, and upkeep of all roadways for three years preceding the filing of CFA's answer.

This order, as certified by the trial court, was then appealed to our Court. In reviewing the order, we held that the first category of plaintiffs was not bound by declaration No. 10 as amended. *See Miles v. Carolina Forest Ass'n,* 141 N.C. App. 707, 541 S.E.2d 739 (2001) (*Miles I*). Applying strict construction to negative covenants, we found that there was no authority under the original declarations to extend them beyond 1 January 1990 and reversed the trial court's conclusion of law. *Miles I,* 141 N.C. App. at 712-13, 541 S.E.2d at 742. Concerning the second category of plaintiffs, we did *not* affirm the trial court's conclusion of law that they were bound by an implied contract in fact, but remanded the case, as to *all* plaintiffs, for the trial court to determine the following:

> [For] the trial court to address whether all of the plaintiffs have impliedly agreed to pay for maintenance, upkeep and operation of the roads, common areas and recreational facilities with the subdivision, and if so, in what amount.

*Id.* at 714, 541 S.E.2d at 742.

Now for our review is the trial court's judgment issued pursuant to the mandate of *Miles I.* In that judgment, the trial court granted CFA a directed verdict at the close of all evidence, concluding, as a matter of law, that an implied contract existed between CFA and all plaintiffs. The trial court ordered plaintiffs to pay these fees for benefits they received by way of maintenance and upkeep of the roads, common areas, and recreational facilities within the subdivision.

In their only assignment of error, plaintiffs contend that the trial court erred in granting CFA's motion for directed verdict finding an implied contract as to all plaintiffs, and denying plaintiffs' same motion. Their issue is based on three alternative arguments: The first is that the covenants under declaration No. 10 are void as a matter of law, and the doctrine of implied contracts cannot breathe new life into them. The second is that the Statute of Frauds (SOF) requires any of the alleged implied agreements between plaintiff and defendants be in writing, and are otherwise unenforceable. And lastly, that the scope of an implied contract is limited to unjust enrichment and plaintiffs have been in no way so enriched. We do not agree with the arguments put forth by plaintiffs, and affirm the trial court pursuant to the following analysis.

Plaintiffs first contend, as a matter of law, that an implied contract cannot be used to breathe new life into null and void restrictive covenants. They do so, citing as their principal authority *Allen v. Sea Gate Assn.*, 119 N.C. App. 761, 460 S.E.2d 197 (1995).

In *Allen*, we found that covenants imposing affirmative obligations could not be amended to allow them to extend into the future, unless they were clearly authorized to do so within the covenants. We held that the language of the covenant in that case, "except that they may be changed, altered, amended or revoked in whole or in part[,]" did not grant such authority. *Id.* at 765, 460 S.E.2d at 200. This is the exact same language found in declaration No. 10 in the case at bar. Therefore, we based our reversal as to the first category of plaintiffs in *Miles I* on the decision in *Allen. Miles I*, 141 N.C. App. at 712-13, 541 S.E.2d at 742.

However, nothing in *Allen* supports plaintiffs' contention that an implied contract on these facts is precluded as a matter of law. In reading the *Allen* decision, it appears the defendants in that case did not raise the implied contract theory in any claim. In *Brown v. Woodrun Ass'n*, 157 N.C. App. 121, 577 S.E.2d 708, *disc. review denied*, 357 N.C. 457, 585 S.E.2d 384 (2003), a case comparing *Miles I* and *Allen*, the *Brown* Court stated:

> In *Miles*, a declaration containing a provision with language similar to that in Paragraph 11 in this case was at issue. By relying on *Allen*, the *Miles* Court held the declaration was unenforceable because the ambiguous provision did not clearly authorize an extension. However, unlike *Allen*, the trial court in *Miles* had found that an implied contract existed between the

defendant and several of the plaintiffs, which required those plaintiffs to contribute to the maintenance, repair, and upkeep of their subdivision for a specific period of time. Thus, on appeal, this Court remanded the case to the trial court for a determination as to whether all plaintiffs had impliedly agreed to pay for maintenance, repair, and upkeep of the subdivision, and if so, in what amount.

Unlike *Miles*, the trial court in the case *sub judice* never found that an implied contract existed. This theory of relief was never raised by defendant at the trial level as a counterclaim even though defendant had raised two other counterclaims which it later voluntarily dismissed. Therefore, defendant's failure to raise an implied contract theory as a counterclaim limits our review on appeal to whether defendant had the ability to enforce restrictions and dues based on the 1991 Restatement. Nevertheless, as plaintiffs' counsel stated in oral arguments, *the possible existence of an implied contract between the parties raises a separate issue that can be determined in a separate action.*

*Id.* at 125-26, 577 S.E.2d at 712-13 (citations omitted) (emphasis added). Therefore, though the underlying covenant as written has been held to have expired by its own terms, it is clear under *Brown* and *Miles I* that an implied contract is a cognizable claim in this instance. Thus, the implied contract does not breathe new life into the expired covenant; rather, it is the terms of the expired covenant that evidences the terms of the implied contract.

In the case at bar, CFA brought a counterclaim under both theories of implied contracts, implied in fact and in law. These are cognizable claims and were properly before the court to consider.

Plaintiff next argues, as a matter of law, that the SOF is applicable in this case. Plaintiffs claim that if a contract exists that otherwise meets the elements of an implied contract, it fails as not having been put in writing and signed by plaintiffs thus violating SOF. North Carolina's SOF states:

> All contracts to sell or convey any lands . . . or any interest in or concerning them . . . exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

N.C. Gen. Stat. § 22-2 (2003). Plaintiffs assert that an agreement to pay for maintenance, upkeep and operation of the roads, common areas and recreational facilities within a subdivision concerns an interest in land, as it acts as a restrictive covenant, or a negative easement. *Hege v. Sellers*, 241 N.C. 240, 248, 84 S.E.2d 892, 898 (1954). However, to be a restrictive covenant or negative easement such that it is binding against subsequent purchasers of land, restrictive covenants must not only be in writing, *Cummings v. Dosam, Inc.*, 273 N.C. 28, 32, 159 S.E.2d 513, 517 (1968), but also must be duly recorded. *Hege*, 241 N.C. at 248, 84 S.E.2d at 898.

At issue is an alleged implied agreement between plaintiffs and CFA for the years of 1998 through 2003. Pursuant to CFA's implied contract theory, they do not argue a duty exists to pay for the benefits conferred which would run with the land to subsequent purchasers of Carolina Forest property. Rather, CFA's implied contract claim is one for services rendered pursuant to an agreement with these plaintiffs. With the exception of restrictive covenants, we can find no case that evokes the SOF in instances where services such as maintenance and upkeep to common areas and roads in a subdivision require the signature by the party to be charged. The SOF is not implicated in this instance, as no interest in land is at issue.

Turning to plaintiffs' final argument, they allege there is insufficient evidence of unjust enrichment for the court to grant a directed verdict in favor of defendant under the theory of an implied contract. We do not agree.

In applying our relevant standard of review to the trial court's findings supporting its order granting a directed verdict in favor of defendant, we note that directed verdicts are appropriate only in jury cases. *Bryant v. Kelly*, 279 N.C. 123, 129, 181 S.E.2d 438, 441 (1971); N.C. Gen. Stat. § 1A-1, Rule 50(a) (2003). This case was tried without a jury. Therefore, we shall treat these motions as having been a motion for involuntary dismissal under Rule 41(b) and shall apply our correct standard of review under that rule. N.C. Gen. Stat. § 1A-1, Rule 41(b) (2003); *Higgins v. Builders and Finance, Inc.*, 20 N.C. App. 1, 7, 200 S.E.2d 397, 402 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974). When a motion to dismiss pursuant to Rule 41(b) is made, the judge becomes both the judge and the jury; he must consider and weigh all competent evidence before him; and he passes upon the credibility of the witnesses and the weight to be given to their testimony. *Dealers Specialties, Inc. v. Housing Services*, 305 N.C. 633, 636, 291 S.E.2d 137, 139 (1982). In the absence of a valid

objection, the court's findings of fact are presumed to be supported by competent evidence, and are binding on appeal. *Id.* A general exception to the judgment and an assignment of error that the court erred in entering the findings of fact and signing the judgment is a broadside assignment of error and does not bring up for review the findings of fact or the evidence on which they are based. *Sweet v. Martin*, 13 N.C. App. 495, 495, 186 S.E.2d 205, 206 (1972); *Merrell v. Jenkins*, 242 N.C. 636, 637, 89 S.E.2d 242, 243 (1955). Where the assignments of error are insufficient to present the findings of fact for review, the appeal presents the question of whether the findings support the court's inferences, conclusions of law, judgment, and whether error appears on the face of the record. *Taney v. Brown*, 262 N.C. 438, 443, 137 S.E.2d 827, 830 (1964).

In the case at bar, plaintiffs' only assignment of error states that CFA's motion for directed verdict should have been denied and plaintiffs' motion for directed verdict should have been granted. Plaintiffs offered no evidence in this case for the trial court to consider because their basis for directed verdict was pursuant to issues of law as set out above. Furthermore, they have made no exceptions to and have not assigned as error any of the trial court's findings of fact. Therefore, in our review, we look to the record to determine whether the findings of fact support the trial court's conclusion of law that an implied contract existed between plaintiffs and CFA.

The trial court, in the order now on appeal, did not specifically set out which theory of implied contract it used in granting defendant a directed verdict, whether it was a contract implied in law or in fact. The trial court cited *Miles I* for its conclusion that an implied contract existed, and in *Miles I* we considered that an implied contract existed pursuant to the initial summary judgment order in this matter. In that initial summary judgment order, the trial court found a contract implied in fact existed as to one subset of plaintiffs. It is clear that the trial court's later directed verdict judgment, on remand to determine whether an implied contract existed as to all plaintiffs, was made pursuant to the conclusion that a contract implied in fact existed. *Miles I*, 141 N.C. App. at 713, 541 S.E.2d 739, 742; *see* Summary Judgment Order.

Concerning an implied in fact contract, this Court has held that:

An implied in fact contract is a genuine agreement between parties; its terms may not be expressed in words, or at least not fully in words. The term, implied in fact contract, only means that the

parties had a contract that can be seen in their conduct rather than in any explicit set of words.

*Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 646, 312 S.E.2d 215, 218 (1984) (where the fact that defendant's representatives observed plaintiff doing the work and did not tell plaintiff to stop the job was conduct consistent with the existence of a contract). Although the terms of an implied in fact contract may not be expressed in words, or at least not fully in words, the legal effect of an implied in fact contract is the same as that of an express contract in that it too is considered a "real" contract or genuine agreement between the parties. *Kiousis v. Kiousis*, 130 N.C. App. 569, 573, 503 S.E.2d 437, 440 (1998), *disc. review denied*, 350 N.C. 96, 528 S.E.2d 363 (1999). Under such an implied in fact contract, damages are based on the reasonable value of the services " 'rendered pursuant to request and agreement to pay therefor (sic).' " *Ellis Jones, Inc.*, 66 N.C. App. at 646, 312 S.E.2d at 218 (quoting *Turner v. Marsh Furniture Co.*, 217 N.C. 695, 697, 9 S.E.2d 379, 380 (1940)). [1]

We need not look far beyond the trial court's unchallenged findings of fact to determine whether they support the conclusion of law that:

There is an implied contract between all of the plaintiffs and the defendant in which the plaintiffs *impliedly agreed* to pay for the maintenance, upkeep and operation of the roads, common areas and recreational facilities within the subdivision.

(Emphasis added.) This conclusion was based on the following:

1. Each lot owner is obligated to pay dues in the amount of $50.00 per year. Payments were due from the plaintiffs beginning in 1998 and continuing to 2003, a total of six payments.

2. Each unimproved lot owner was assessed an amount for maintenance of common areas and recreational facilities. For the years 1998 and 1999, the assessment was $145.00 per year. For the year 2000, the assessment was $150.00. For the years 2001, 2002 and 2003, the assessment was $170.00 per year.

---

1. Plaintiffs have not assigned as error the damages found by the court as to each plaintiff, and we therefore do not review whether the damages were properly assessed under the contract implied in fact theory. To the extent that plaintiffs challenge the damages in their brief concerning their use of the common areas, we deem those issues abandoned under the N.C. Gen. Stat. § 1A-1, Rule 10(a).

MILES v. CAROLINA FOREST ASS'N

[167 N.C. App. 28 (2004)]

3. Each unimproved lot owner was assessed an amount primarily for the purpose of resurfacing the roadways in Carolina Forest and the Lake in the Pines. The amount of the assessment was $45.00 in 1998, $50.00 in 1999, and $60.00 thereafter for the years 2000, 2001, 2002 and 2003.

4. Each unimproved lot owner was assessed an amount for road repairs, including but not limited to repair of pot holes and necessary patching or work on the road shoulders. This amount was $20.00 for 2002 and $20.00 for 2003, a total of $40.00.

5. In the year 2001, there was a severe ice storm which left fallen trees, limbs, and other debris blocking the roadways and requiring road cleanup. In order that property owners could have access to and from their property, Carolina Forest Association made an assessment for storm damage cleanup. This assessment was made in 2001 as $80.00 and is listed as "Special Road Cleanup Assessment."

6. None of the road maintenance fund has been used by the defendant for non-road matters.

These uncontested findings of fact support the trial court's conclusion that a contract implied in fact existed between plaintiffs and CFA, and these findings are supported by competent, unchallenged evidence. Plaintiffs were assessed specific fees for benefits to their unimproved properties. These benefits protected both the access to and the value of their properties, by way of maintaining private roads, recreational facilities, a pool, a guard station, and an administrative office. The record shows that plaintiffs were on clear notice that these benefits were being incurred: Approximately half of them actually voted for the amendments to declaration No. 10 as recorded in 1990, which included consent to pay the assessment fees for the exact benefits at issue in this case. All of the plaintiffs had paid some or all of the fees and assessments up until 1997 and 1998, and were incurring the benefit from the improvements funded by such payments. This conduct is consistent with the existence of a contract implied in fact, and plaintiffs' attempt to stop payment on these known benefits, without more, is tantamount to breach of that contract.

Having thoroughly reviewed the record, transcript, and briefs, we find the record sufficient for the trial court's determination that an implied in fact contract existed between defendant and all plaintiffs.

**IN RE D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.**

[167 N.C. App. 38 (2004)]

As noted, any issue concerning whether the value of the services rendered, as damages, was adequately assessed and attributed to plaintiffs was not before us on review. Thus, plaintiffs' assignment of error is overruled, and we uphold the trial court's directed verdict (motion to involuntarily dismiss) in favor of defendant.

Affirmed.

Judges McGEE and ELMORE concur.

———————————

IN RE: D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.