LAKE TOXAWAY COMMUNITY ASSOCIATION, INC.,
a North Carolina non-profit corporation, Plaintiff
v.
RYF ENTERPRISES, LLC, Defendant

No. COA12-422

Filed 16 April 2013

**1. Contracts—implied in fact—acceptance of benefits—agreement to pay for upkeep, maintenance, and repair**

The trial court did not err by concluding that there was a contract implied in fact between plaintiff and defendant. The uncontested findings of fact supported the trial court's conclusion that implicit in defendant's acceptance of the benefits of using the pertinent roads and lake was an agreement to pay for the upkeep, maintenance, and repair of the roads and lake.

**2. Unjust Enrichment—retained benefits without payment—reasonable value of benefits**

The trial court did not err by concluding that it would be inequitable and unjust for defendant to retain benefits provided by plaintiff without payment of the reasonable value of said benefits. Defendant

accepted a measurable benefit from plaintiff, and as a result, was unjustly enriched.

**3. Contracts—implied in fact—reasonable value of services**

The trial court did not err by concluding that the amounts charged by plaintiff were a reasonable value of services for a contract implied in fact. The pertinent findings of fact supported the conclusion that the amounts invoiced to defendant represented a reasonable value of the services rendered by plaintiff to defendant.

**4. Appeal and Error—preservation of issues—failure to present issue at trial**

Although plaintiff contended that the trial court erred by disregarding lots that were combined by owners to avoid multiple assessments, this assignment of error was not preserved under N.C. R. App. P. 10(a)(1) because plaintiff did not present this issue at trial.

**5. Contracts—implied in fact—maintenance fees**

The trial court did not err by concluding that plaintiff could require defendant to pay maintenance fees as a condition of defendant's right to place a boat on Lake Toxaway. The parties had a contract implied in fact based on the conduct of the parties.

**6. Costs—expert witness fees—travel expenses—time spent at trial**

The trial court did not err by taxing expert witness fees against defendant. N.C.G.S. § 7A-314(b) and (d) gives the trial court discretion to award travel expenses and fees for time the witness spent at trial when not testifying.

**7. Easements—appurtenant—sufficiency of findings of fact**

The trial court's findings of fact supported its conclusions of law that defendant possessed an easement appurtenant to use Lake Toxaway.

**8. Trespass—criminal and civil penalties—common law doctrine of lex neminem cogit ad vana seu inutilia peragenda**

Although plaintiff contended the trial court had the option of imposing criminal and civil penalties for trespassing, the trial court did not err by concluding that the common law doctrine of *lex neminem cogit ad vana seu inutilia peragenda* (the law compels no one to do vain or useless things) applied. The evidence supported the trial court's finding that it would be practically impossible to restrict property owners, including defendant, from using Lake Toxaway

since it covered approximately 640 acres of lake bed and 14 miles of shoreline.

Appeal by defendant and cross-appeal by plaintiff from judgments entered 30 September and 20 October 2011 by Judge James U. Downs in Transylvania County Superior Court. Heard in the Court of Appeals 26 September 2012.

*Van Winkle, Buck, Wall, Starnes and Davis, PA., by Craig D. Justus, for plaintiff-appellee and cross-appellant.*

*K & L Gates, LLP, by Roy H. Michaux, Jr., for defendant-appellant and cross-appellee.*

BRYANT, Judge.

Where the trial court's conclusions of law – that there was a contract implied in fact between the parties, that defendant accepted the benefits provided by plaintiff, and that the amounts invoiced from plaintiff to defendant were a reasonable value for services rendered – were supported by its findings of fact, and where the trial court's order of expert witness fees against defendant was not made in error, we affirm the order of the trial court. Defendant's remaining issue on appeal is dismissed. Where, on cross-appeal by plaintiff, the trial court's findings of fact support its conclusions of law that defendant possessed an easement appurtenant to use Lake Toxaway and that the doctrine of *lex neminem cogit ad vana seu inutilia peragenda* applied, we affirm the order of the trial court.

### Facts and Procedural History

On 13 April 2009, plaintiff Lake Toxaway Community Association, Inc., filed a complaint for money owed against defendant RYF Enterprises, LLC. Defendant filed an answer and counterclaim for declaratory judgment. Thereafter, plaintiff amended its complaint, which was filed on 3 February 2010. The complaint, as amended, alleged the following: By deed dated 14 December 2000, defendant became the owner of real property ("Property") identified as Lot 11, Block D and an adjoining strip of land located within the residential subdivision development known as Lake Toxaway Estates ("the Estates") in Transylvania County. In the 1960's, Lake Toxaway Company (LTC) developed the Estates, which now includes 9,000 acres containing over 1,200 lots as well as the entirety of the lake bed comprising Lake Toxaway and surrounding property,

including defendant's Property. Lake Toxaway is a man-made lake, which lake bed covers approximately 640 acres and 14 miles of shoreline. LTC has permitted property owners within the Estates, including defendant, to use Lake Toxaway for recreational purposes such as boating, fishing, and swimming. Although lake privileges were specifically granted by deed to some of the purchasers of lots within the Estates, LTC alleges it did not specifically grant lake privileges appurtenant to defendant's Property.

Plaintiff is an association whose members consist of property owners within the Estates. On 31 December 2003, pursuant to a transition agreement between LTC and the Association, plaintiff became the owner of and responsible for the maintenance, repair, and improvement of certain common areas within the Estates. The common areas included Lake Toxaway and the rights of way of the private road that provided access to lots, including defendant's Property. Plaintiff alleged that since defendant's acquisition of the Property in 2000, defendant had used Lake Toxaway with the permission of plaintiff and plaintiff's predecessor-intitle, LTC.

On 15 October 2008, plaintiff delivered an invoice to defendant. The invoice for services rendered, totaling $1,767.40, represented defendant's *pro rata* share of the annual expenses incurred to maintain, repair, and/or improve the private roads and Lake Toxaway during the 2008-2009 fiscal year. Although the due date for payment of the invoice was 17 November 2008, defendant did not pay this invoice.

Plaintiff's claims for relief included: a request for declaratory judgment to determine the rights and obligations of the parties regarding the use and maintenance of plaintiff's private roads and Lake Toxaway; breach of contract implied in fact; breach of contract implied in law/ unjust enrichment; and breach of contribution obligations.

On 5 May 2010, defendant filed an answer to the amended complaint and reasserted its counterclaim for declaratory judgment asserting that defendant had "no obligations to plaintiff regarding the maintenance, repair, and improvement of Lake Toxaway and of the roads located within Toxaway Estates." On 19 July 2010, plaintiff filed a reply to defendant's counterclaim.

Following a bench trial, on 30 September 2011, the trial court entered judgment as follows: that defendant pay plaintiff $1,767.40 plus interest at the legal rate from and after 14 April 2009 when the complaint was filed and $3,949.81 plus interest from and after the date of the judgment; that defendant has an easement right to use the private roads within the

Estates that are owned and maintained by plaintiff; that defendant did not have an easement right to operate boats on Lake Toxaway in a manner that conflicted with plaintiff's rules and regulations; that plaintiff be awarded $12,002.50 as costs pursuant to G.S. 6-20, 7A-305, and 7A-314; and, that plaintiff has the right to exercise any rights of collection pursuant to its attachment of defendant's property, which would remain in full force and effect pending payment of the judgment or as otherwise provided by law.

An order amending judgment was entered on 20 October 2011, modifying a finding of fact but not otherwise disturbing the judgment of the trial court. From the 30 September 2011 judgment and 20 October 2011 order amending judgment, defendant appeals. Plaintiff also cross appeals from both judgments.

---

### Standard of Review

"[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Willen v. Hewson*, 174 N.C. App. 714, 718, 622 S.E.2d 187, 190 (2005) (citation omitted).

> Upon a finding of such competent evidence, this Court is bound by the trial court's findings of fact even if there is also other evidence in the record that would sustain findings to the contrary. Competent evidence is evidence "that a reasonable mind might accept as adequate to support the finding. The trial court's conclusions of law, by contrast, are reviewable *de novo*.

*Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App. 368, 369-70, 614 S.E.2d 555, 558 (2005) (citations omitted).

### Defendant's Appeal

Defendant presents the following issues on appeal: whether the trial court erred (I) by concluding that there was an implied contract in fact between plaintiff and defendant; (II) by concluding that it would be inequitable and unjust for defendant to retain benefits provided by plaintiff without payment of the reasonable value of said benefits; (III) by concluding that the amounts charged by plaintiff were "a reasonable value of services[;]" (IV) by disregarding lots that were combined by owners to avoid multiple assessments; (V) by concluding that plaintiff can require

defendant to pay maintenance fees as a condition of defendant's right to place a boat on Lake Toxaway; and (VI) by the taxing of expert witness fees against defendant.

*I*

**[1]** First, defendant argues the trial court erred in reaching conclusion of law #1 which reads as follows:

> There is an implied contract in fact between the Plaintiff and the Defendant in which the Defendant impliedly agreed to pay for the upkeep, repair and maintenance of the private roads and roadsides within [the Estates] and Lake Toxaway, including its water body, dam and spillway due to the defendant having elected to use the roads and lake and accepting the benefits of such use, notwithstanding a lack of a meeting of the minds.

Defendant contends that a contract implied in fact requires a "meeting of the minds" and because the trial court specifically concluded there was a lack of the meeting of the minds, the trial court's conclusion constitutes reversible error. This argument is without merit.

It is well established that "[t]he essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) (citations omitted). However,

> [a] contract implied in fact, . . . arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation is implied or presumed from their acts[.] With regard to contracts implied in fact, . . . one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance.

*Revels v. Miss Am. Org.*, 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007) (citations and quotation marks omitted).

> An implied contract is valid and enforceable as if it were express or written. [A]part from the mode of proving the fact of mutual assent, there is no difference at all in legal effect between express [contracts] and contracts implied in fact. Whether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact.

*Snyder*, 300 N.C. at 217, 266 S.E.2d at 602 (citations and quotation marks omitted).

We note that because defendant has failed to challenge any specific findings of fact, we presume them to be supported by competent evidence and therefore deem them to be binding on appeal. *See Cohen v. McLawhorn*, 208 N.C. App. 492, 498, 704 S.E.2d 519, 524 (2010) (stating that "[u]nchallenged findings of fact are presumed to be supported by competent evidence, and are binding on appeal."). In our review, we look to the record to determine whether the findings of fact support the trial court's conclusion of law that an implied contract in fact existed between the parties.

In 2003, LTC and plaintiff entered into a Transition Agreement whereby ownership and responsibility for managing the dam, lake, roads, and common areas were conveyed to plaintiff. Since January 2004, plaintiff has managed the upkeep, repair, and maintenance of the private roads, dam, lake, and common areas by cleaning roadside ditches and drainage ways, removing roadside trees, repaving roads and dredging Lake Toxaway. Plaintiff also performed the administrative work necessary to determine the *pro rata* share of expenses to be paid by the property owners for the expense of upkeep, repair and maintenance. For its *pro rata* share of the expenses related to upkeep, repair, and maintenance, defendant was billed a total of $1,767.40 for fiscal year 2008 – 2009.

Since August 1965, when Lot 11, Block D was first deeded by LTC, subsequent owners of the Property, including defendant, have used Lake Toxaway continuously for boating and other recreational purposes. *See Snyder*, 300 N.C. at 218, 266 S.E.2d at 602 (stating that "[a]cceptance by conduct is a valid acceptance"). Defendant has also used the private roads, containing multiple points of access, within Lake Toxaway Estates. Defendant benefits from having the availability of well-maintained and secured private roads to and from the Property and for travel within Lake Toxaway Estates, in addition to a well-maintained and secure Lake Toxaway and dam.

We agree with the trial court that:

> [w]ith knowledge of the services provided by the Plaintiff in maintaining and managing the operations and care of the private roads, roadsides, and Lake Toxaway, Defendant agreed by its conduct . . . in using or claiming the right to use the private roads and lake so maintained and managed

LAKE TOXAWAY CMTY. ASS'N, INC. v. RYF ENTERS., INC.

[226 N.C. App. 483 (2013)]

by the Plaintiff to pay for the maintenance, repair and upkeep of the roads, roadsides, and lake.

*See Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 37, 604 S.E.2d 327, 333-34 (2004) (holding that the plaintiffs, who were lot owners within the defendant's subdivision association, had a contract implied in fact with the defendant where the plaintiffs received benefits to their properties and the plaintiffs were on clear notice that these benefits were being incurred).

Because the uncontested findings of fact support the trial court's conclusion that implicit in defendant's acceptance of the benefits of using the roads and the lake, was an agreement to pay for the upkeep, maintenance and repair of the roads and lake. Therefore, based on the record before us, we hold that a contract implied in fact existed between the parties. Defendant's argument is overruled.

*II*

[2] Next, defendant argues the trial court erred by reaching conclusion of law #7:

> By using or claiming the right to use the private roads within [the Estates] and Lake Toxaway, the Defendant has accepted the benefits provided by the Plaintiff in its efforts to preserve and protect access to, and the function and safety of, said private roads, roadsides and Lake Toxaway and it would be inequitable and unjust for Defendant to retain said benefits, the costs of which are supported by more than ninety percent (90%) of those who contribute into the Association, without paying for the reasonable value of same.

"Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, __ N.C. App. __, __, 712 S.E.2d 670, 677 (2011) (citation omitted).

Defendant contends that plaintiff "failed to show how the expense associated with building, maintaining and enhancing an additional 30 miles of roads and in collecting assessments from all of the owners of 1,224 lots in any way benefited RYF or was done at its request." As noted in Issue *I*, defendant has failed to challenge any specific findings of fact. After careful review, we determine that the trial court's unchallenged

findings of fact support its conclusion of law #7. It is uncontested that plaintiff's upkeep, repair, and maintenance of the dam, Lake Toxaway, roads, and common areas have conferred a measurable benefit on defendant. Plaintiff conferred this benefit by cleaning out ditches and drainage ways, removing trees, repaving roads, etc. It is also unchallenged that plaintiff spends "substantial sums of money every year protecting access to and from public roads to lots, including [the Property], which is located in the middle of the development." Plaintiff then assigned to the property owners an annual, proportionate share of the costs of maintaining, repairing, and improving the private roads and roadsides within Lake Toxaway Estates and Lake Toxaway. The total of plaintiff's maintenance billing invoices to defendant since August 2008 amounted to $5,717.21, less credits.

Although defendant argues that it did not request plaintiff's services, evidence that defendant consciously accepted the benefit conferred upon it from those services plaintiff rendered is illustrated by the following uncontested finding of fact:

> [w]ith knowledge of the services provided by [plaintiff] in maintaining and managing the operations and care of the private roads, roadsides, and Lake Toxaway, [defendant] agreed by its conduct . . . in using or claiming the right to use [the aforementioned areas] to pay for the maintenance, repair and upkeep of the roads, roadsides and lake.

Therefore, the trial court did not err by finding and concluding that defendant accepted a measurable benefit from plaintiff and as a result was unjustly enriched. Defendant's argument is overruled.

*III*

[3] In its third argument, defendant challenges conclusion of law #8:

> The amount of $5,717.21, which reflects the invoiced amounts less credits reflected in the Plaintiff's fiscal year 2008-2009, 2009-2010 and 2010-2011 invoices, constitutes a reasonable value of the services rendered by Plaintiff to Defendant related to the private roads, roadsides and Lake Toxaway for said fiscal years.

Defendant asserts that that the trial court erred by concluding that the amounts charged by plaintiff were "reasonable." Defendant contends that its obligation to pay maintenance fees "extends only to those amenities used by RYF in an amount proportional to its use of those amenities." We disagree.

Defendant relies almost solely on the holding from the Arizona Court of Appeals in *Freeman v. Sorchych*, 226 Ariz. 242, 245 P.3d 927 (2011), to support its argument that the fees imposed should be calculated according to defendant's actual use of the roads and lake. We note that we are in no way bound by a case from the Arizona Court of Appeals, nor are we persuaded by defendant's contentions.

Our North Carolina courts have held that the general rule, "in the absence of contract stipulation or prescriptive right to the contrary, [is that] the owner of an easement is liable for costs of maintenance and repairs where it exists and is used and enjoyed for the benefit of the dominant estate alone[.]" *Lamb v. Lamb*, 177 N.C. 150, 152, 98 S.E. 307, 309 (1919). Further, once there is a determination that an implied in fact contract exists, the reasonable value of services is used to determine damages. *See Turner v. Marsh Furniture Co.*, 217 N.C. 695, 697, 9 S.E.2d 379, 380 (1940).

In the instant case, it is uncontested that defendant had an easement right to use all of the private roads within Lake Toxaway Estates. Other unchallenged findings of fact made by the trial court also establish that defendant has used the private roads with its multiple points of access within Lake Toxaway Estates and has used Lake Toxaway for boating and other recreational purposes. "Since 2007, [defendant], in several correspondences with [plaintiff,] has claimed a right to use *all* the roads maintained by the Association and Lake Toxaway." (emphasis added).

Unchallenged findings of fact further support the conclusion of law that the invoices from plaintiff to defendant constitute a reasonable value of services rendered: finding of fact 51 and 52 state that defendant's bills to plaintiff for the fiscal years 2008 through 2011 were based on a *pro rata* share of the annual expenses of the Association. The trial court also found that the fees charged by plaintiff were directly related to the services and benefits performed by plaintiff and that the expenditures budgeted for and actually spent by plaintiff were reasonable. Finding of fact 65 provides that plaintiff's maintenance billing methodology, including expenses allocated, and classifications of property within Lake Toxaway Estates whose deeds are silent as to membership in the association, are "reasonable in determining the proportionate allocations for the costs related to the upkeep, repair and maintenance of the private roads, roadsides and Lake Toxaway among the users and/or beneficiaries of such properties, including the Defendant."

Accordingly, the pertinent findings of fact support the conclusion that the amounts invoiced to defendant represented a reasonable value of the services rendered by plaintiff to defendant. Defendant's argument is overruled.

*IV*

**[4]** In its fourth argument, defendant contends that plaintiff adopted an illegal policy – Resolution No. 090501 – which gave plaintiff the right to allow multiple, contiguous lots under single ownership to be combined as one for the purpose of assessments. We do not review this contention.

Because plaintiff did not obtain a ruling by the trial court on this issue, it is not properly preserved for appeal. N.C. R. App. P. 10(a)(1) (2013) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make[.] . . . It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.").

*V*

**[5]** Defendant argues that the trial court erred by finding that plaintiff can require defendant to pay lake maintenance fees as a condition to defendant's right to place a boat on Lake Toxaway. We disagree.

As discussed in Issue *I*, we affirmed the trial court's conclusion of law that the parties had a contract implied in fact. Plaintiff's implied offer to defendant consisted of managing the upkeep, repair, and maintenance of Lake Toxaway. Defendant's implied acceptance of plaintiff's implied offer was the recreational use of Lake Toxaway for purposes such as boating since defendant acquired the property. Based on the conduct of the parties, the trial court's finding that plaintiff could require defendant to pay lake maintenance fees as a condition of defendant's recreational use of Lake Toxaway was supported by competent evidence. Defendant's argument is overruled.

*VI*

**[6]** In its last argument, defendant contends the trial court erred by allowing expert witness fees for three of plaintiff's witnesses based on the substance of their testimonies. We disagree.

"[T]rial courts are afforded wide latitude of discretion when making a determination about the admissibility of expert testimony." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citation and quotation marks omitted). Pursuant to section 7A-305(d)(11) of the North Carolina General Statutes, the trial court is required to allow expert witness fees solely for the time the witness spent testifying at trial. N.C. Gen. Stat. § 7A-305(d)(11) (2011). However, pursuant to section 7A-314(b) and (d), respectively, the trial court has discretion to

award travel expenses, and fees for time the witness spent at trial when not testifying. N.C. Gen. Stat. § 7A-314(b) and (d) (2011); *Springs v. City of Charlotte*, 209 N.C. App. 271, 704 S.E.2d 319 (2011).

Defendant does not challenge the award of expert witness fees for Lamar Sprinkle, a registered land surveyor. However, he does challenge the award of expert witness fees for the other three expert witnesses, contending their testimony was neither reasonable nor necessary. We will address each of the three witnesses separately.

First, defendant argues that the content of testimony provided by Everette A. Schafer failed to support any theory advanced by plaintiff and was irrelevant to any legal question. "[I]n judging relevancy, it should be noted that expert testimony is properly admissible when such testimony can assist the jury to draw certain inferences from facts because the expert is better qualified than the jury to draw such inferences." *Howerton*, 358 N.C. at 462, 597 S.E.2d at 688-89 (citation omitted).

At trial, Schafer was tendered and accepted without objection as an expert in the field of real property appraisal. Schafer testified to the market value added to defendant's Property based on having the following features provided by plaintiff: well-maintained and improved roads; maintenance of common areas such as walkways, landscaping, etc.; the excellent condition of Lake Toxaway based on plaintiff's maintenance of Lake Toxaway and its proximity to defendant's Property; and the multiple points of road access within Lake Toxaway Estates. Based on the content of the foregoing testimony, Schafer's expert testimony was relevant to assist the trier of fact, here the trial judge, in determining the benefit received by defendant.

Next, defendant argues that Susan Barbour's testimony was duplicative of previous testimony tendered by plaintiff and that Barbour's testimony was "factual testimony" that "could have been provided by either a lay person or a paralegal."

> It is not necessary that an expert be experienced with the identical subject matter at issue or be a specialist, licensed or even engaged in a specific profession. It is enough that the expert witness because of his expertise is in a better position to have an opinion on the subject than is the trier of fact.

*Id.* at 461, 597 S.E.2d at 688 (citations and quotation marks omitted).

We note that Barbour was tendered and accepted without objection as an expert in real estate. An experienced real estate attorney, Barbour had conducted thousands of title examinations and rendered

title examination reports which included examinations for easements. At trial Barbour explained what constituted a special warranty deed and how an easement was created. Barbour also testified regarding her interpretation of several deeds within Lake Toxaway Estates. Specifically, she provided testimony regarding whether certain deeds utilized by LTC "actually expressed grants within the document, or other references to underlying restrictions that might have references to the lake rights." This record amply supports a determination that Barbour's expertise placed her in a better position to assist the trial court judge. Indeed the trial judge determined Barbour's testimony to be "reasonable and necessary."

Defendant also argues that the substance of Barbour's testimony was duplicative in nature to the testimony of defendant corporation's sole member, Rebecca Young Fraser. The record reveals that Barbour, plaintiff's expert witness, was called to testify *prior* to defendant's witness, Fraser. We reject defendant's contention that there was error in the admission of similar testimony that preceded defendant's testimony. Further, our Court has previously held that it is not an abuse of discretion to assess expert witness fees for testimony, "even though they all were used to prove identical facts in issue." *Lewis v. Setty*, 140 N.C. App. 536, 539, 537 S.E.2d 505, 507 (2000) (citation omitted).

In challenging the fee award for the third expert witness, Russell Bendel, defendant argues that his testimony did not constitute "expert testimony" and that it was duplicative of testimony already offered by plaintiff. Bendel was tendered and accepted without objection as an expert witness in civil engineering, particularly relating to dams. Bendel testified regarding the annual inspection reports for the Lake Toxaway dam. Bendel had prepared annual inspection reports for at least 200 different dams. Bendel testified that it was necessary and reasonable for plaintiff to perform repairs and maintenance on the Lake Toxaway dam in order "to prevent a larger problem from developing, which would potentially cause a failure of those dams." Clearly, Bendel's expertise and testimony regarding the necessity for repairs and maintenance on the Lake Toxaway dam assisted the trial court judge. Accordingly, we overrule defendant's arguments challenging expert fees awarded for Schafer, Barbour and Bendel.

### Plaintiff's Cross-Appeal

Plaintiff presents the following issues on cross-appeal: whether the trial court erred by (VII) concluding that defendant possessed an easement appurtenant to use Lake Toxaway; (VIII) finding that the common

law doctrine of *lex neminem cogit ad vana seu inutilia peragenda* applied to prevent plaintiff's enforcement against swimming, wading or fishing activities associated with lot owners abutting Lake Toxaway.

## VII

**[7]** Plaintiff challenges a portion of the trial court's conclusion of law #3: "The Court hereby declares that the defendant, its successors and assigns, has an appurtenant easement to use Lake Toxaway and the private roads owned by the plaintiff without having to be a member of the Association."

"An appurtenant easement is 'an easement created for the purpose of benefiting particular land. This easement attaches to, passes with and is incident of ownership of the particular land.' *Nelms v. Davis,* 179 N.C. App. 206, 209, 632 S.E.2d 823, 825-26 (2006) (citations omitted).

In *Shear v. Stevens Bldg. Co.,* 107 N.C. App. 154, 418 S.E.2d 841 (1992), the parties argued that the trial court erred in declaring that purchasers of lots within a residential subdivision had an appurtenant easement to a lake within that subdivision. The *Shear* Court stated that "[i]t is well settled in this jurisdiction that an easement may be created by dedication. This dedication may be either a formal or informal transfer and may be either implied or express." *Id.* at 161-62, 418 S.E.2d at 846 (citation omitted). "[I]mplied dedication is also one arising by operation of law from the acts of the owner . . . . The intent which the law means, however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner." *Id.* at 163, 418 S.E.2d at 846-47. Our Court held that the contents of a recorded map – which depicted a lake, playground, and streets – alone created an easement to the lake and surrounding property. *Id.* at 163, 418 S.E.2d at 846. However, our Court also noted that

> oral representations and actions by defendants' predecessors concerning the lake . . . necessarily include the undeveloped areas around the lake in the scope of the easement. These representations and actions, along with the use of the plat map and its depiction of the lake and property, decidedly show an intent to create an easement to the lake and surrounding undeveloped property.

*Id.*

In the instant case, the trial court made the following unchallenged findings of fact relevant to its determination that an easement [appurtenant] to the lake was created:

LAKE TOXAWAY CMTY. ASS'N, INC. v. RYF ENTERS., INC.

[226 N.C. App. 483 (2013)]

6. In 1961, [LTC] commenced the development of lots near and around Lake Toxaway and advertised them for sale pursuant to published materials and a General Development Plan of the property of [LTC]. One of the advertising brochures shows completed streets and lots sold and platted as of January, 1969.

7. The advertising materials utilized by [LTC] included photographs of the facilities and statements that were designed to induce the purchase of lots at Lake Toxaway as follows:

- Lake Toxaway, North Carolina, . . . has been restored for the pleasure of families who are establishing vacation or year-around homes along its 14-mile shoreline. Once again Lake Toxaway is offering a multitude of opportunity for fun along with its matchless climate and beauty

- The enchantment of leisure at lovely Lake Toxaway begins with its beauty, the lake's clear 640 acre expanse shining beneath its coronet of high mountains.

  . . .

- Water level is maintained at a constant 3,012 feet above sea level, an advantage not enjoyed by residents of many other mountain lakes, many of which have hydro-electric installations demanding constant water level changes. Toxaway is a purely recreational lake, and has no such power installation.

. . .

9. At the time [LTC] commenced selling lots, the area was very remote and Lake Toxaway and its use by lot owners was the primary focus to induce purchasers to buy lots.

. . .

11. In July of 1970, [LTC] commenced the use of printed form deeds that included a specific provision for lake privileges as follows:

> The owner of the lot hereinabove described shall have the same privileges in and to the use of Lake Toxaway

> as other persons to whom Lake Toxaway Co. has sold
> lots and granted lake privileges.

Based on the trial court's unchallenged findings of fact which are binding on appeal, plaintiff's practice of advertising Lake Toxaway as having "been restored for the pleasure of families who are establishing vacation or year-around homes along its 14-mile shoreline" and focusing primarily on Lake Toxaway and its use to induce purchasers to buy lots supports the trial court's conclusion that "defendant, its successors and assigns, ha[ve] an appurtenant easement to use Lake Toxaway[.]" Plaintiff's argument is overruled.

*VIII*

[8] Next, plaintiff challenges the trial court's finding of fact #40:

> Due to the size of Lake Toxaway, it would be practically impossible for [plaintiff] to restrict those owners of property abutting Lake Tox[a]way, including the Defendant, from using the Lake from their respective shorelines for swimming, wading or fishing and the Court is not inclined under the common law doctrine of *lex neminem cogit ad vana seu inutilia peragenda* to prevent what would otherwise be a vain and useless act.

Plaintiff argues that this doctrine was misapplied because the trial court had the option of imposing criminal and civil penalties for trespassing.

The common law doctrine of *lex neminem cogit ad vana seu inutilia peragenda* states that "the law compels no one to do vain or useless things." *Bailey v. State*, 330 N.C. 227, 249, 412 S.E.2d 295, 308 (1991). Here, the record shows that Lake Toxaway covers approximately 640 acres of lake bed and 14 miles of shoreline. The evidence supports the trial court's finding that it would be practically impossible to restrict property owners, including defendant, from using Lake Toxaway. Plaintiff's cite to *Adams Creek Assocs. v. Davis*, 186 N.C. App. 512, 652 S.E.2d 677 (2007), for the contention that the trial court could enforce civil and criminal penalties for trespass is not persuasive, and plaintiff cites no authority that would require the trial court to consider such penalties. Because we hold that there is competent evidence to support the trial court's finding of fact #40, plaintiff's argument is overruled.

Affirmed.

Judges HUNTER, Robert C., and STEELMAN concur.