JOHN P. REIDY AND WIFE, TERRI L. REIDY, PLAINTIFFS v.
WHITEHART ASSOCIATION, INC., DEFENDANT

No. COA06-1310

(Filed 7 August 2007)

**1. Estoppel— validity of homeowners association—delay in contesting—earlier recognition**

Plaintiffs were estopped from contesting the validity of a homeowners association where they purchased their lot subject to the declaration of covenants; they did not contest the validity of the association for nearly five years, until the architectural committee denied their design approval request; and there was evidence in the record that plaintiffs recognized the validity of the association by paying dues.

**2. Associations; Deeds— validity of homeowners association—incorporation after sale of first lot**

The Planned Community Act applies to this case despite plaintiff's contention that the homeowners association was incorporated after the conveyance of the first lot in violation of N.C.G.S. § 47F-3-101 (2005). That was not one of the provisions made applicable to communities created before the effective date of the Act.

**3. Deeds; Constitutional Law— contract clause—homeowners association—retroactive application of enforcement statute**

The Contract Clause of the United States Constitution was not violated by retroactive application of a statute allowing fines and suspension of services for violating the regulations and covenants of a homeowners association. The statute merely provides an additional remedy for the enforcement of the declaration and does not disturb a vested right, impair a binding contract, or create a new obligation.

**4. Deeds; Constitutional Law— substantive due process— Planned Community Act**

Retroactive application of the Planned Community Act did not violate plaintiffs' substantive due process rights. The individual statutes that form the Act are rationally related to the legitimate purpose of providing a statutory framework for dealing with modern real estate developments, particularly planned communities.

**5. Constitutional Law— procedural due process—enforcement of homeowners association covenants**

Plaintiffs' procedural due process rights were not violated by the procedure provided by a homeowners association. Even if the creation of the statutory framework by the legislature is sufficient state action, the statutes provided notice and the opportunity to be heard, and the association in this case provided both.

**6. Appeal and Error— preservation of issues—absence of legal authority**

An argument in plaintiffs' brief with no citation to legal authority was taken as abandoned.

**7. Deeds; Constitutional Law— enforcement of homeowners association covenants—no evidence of discrimination**

A homeowners association did not discriminate against plaintiffs by refusing to allow a building modification where plaintiffs admitted erecting their staircase and door without the architectural committee's approval, and in fact did so in the face of disapproval. Moreover, there does not appear to be any evidence of discrimination.

**8. Appeal and Error— cross-appeal—notice filed with superior court clerk**

The homeowners association's cross-appeal was dismissed for lack of jurisdiction where its notice of cross-appeal was filed with the Clerk of the Court of Appeals, not with the Clerk of Superior Court of Wake County.

Appeal by plaintiffs and cross-appeal by defendant from order entered 20 June 2006 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 4 June 2007.

*Harris & Hilton, P.A., by Nelson G. Harris, for plaintiff appellants.*

*Jordan Price Wall Gray Jones & Carlton, by Henry W. Jones, Jr., Brian S. Edlin and Jessica E. Cooley, for defendant appellee, cross-appellant.*

McCULLOUGH, Judge.

Plaintiffs appeal from an order granting defendant's motion for summary judgment and mandatory injunction and order denying plaintiffs' motion for summary judgment. Defendant cross-appeals from the same order because the trial court did not award reasonable attorneys' fees to defendant. We affirm.

FACTS

John P. Reidy, and wife, Terri L. Reidy ("plaintiffs") obtained title to Lot 54 in the Whitehart Subdivision ("the Lot") by deed recorded on 16 July 1999. On or about 28 February 2005, plaintiff John Reidy requested design approval from the Whitehart Architectural Committee for a structural addition to his property. Specifically, he wanted to add a door and staircase to the rear exterior of his detached garage in order to provide access to the upstairs storage area above his garage. On 3 March 2005, the Architectural Committee denied Mr. Reidy's request because the addition would not be consistent with the aesthetics of the neighborhood. Despite the Committee's decision, plaintiffs commenced construction of the staircase on the rear of their detached garage in or about August of 2005.

In response to plaintiffs' disregard of the Architectural Committee's decision, Whitehart Association, Inc. ("the Association") sent plaintiffs a letter on 31 August 2005 inviting them to attend a hearing. Plaintiffs appeared on 27 October 2005 before the Board of the

**REIDY v. WHITEHART ASS'N**

[185 N.C. App. 76 (2007)]

Association. The Board voted to impose a fine in the amount of $25.00 per day commencing on 1 November 2005 for plaintiffs' violation.

On 31 October 2005, plaintiffs filed a complaint against the Association. On 21 December 2005, the Association served its answer, motions to dismiss, motion for judgment on the pleadings, affirmative defenses and counterclaim on plaintiffs. The counterclaim sought, in part, to collect the fines which were secured by a claim of lien. On 3 January 2006, plaintiffs filed their response to the Association's counterclaim and affirmative defenses.

On 12 December 2005, plaintiffs filed a motion for summary judgment as to all but one of the counts included in their complaint. On 27 January 2006, the Association filed its cross motion for summary judgment on all counts contained in defendant's counterclaim and all counts contained in plaintiffs' complaint.

On 24 February 2006, the trial court entered an order granting the Association's cross motion for summary judgment on counts 1, 2, 3, 5, 6, and 7 of plaintiffs' complaint. In addition, the trial court denied plaintiffs' motion for summary judgment as to counts 1, 2, 3, 5, 6, and 7 of plaintiffs' complaint. The trial court continued the hearing on count 4 of plaintiffs' complaint and counts 1 and 2 of the Association's counterclaim.

The plaintiffs filed a motion for summary judgment as to count 4 of their complaint and counts 1 and 2 of defendant's counterclaim. On 20 June 2006, the trial court entered an order granting the Association's cross motion for summary judgment as to count 4 of plaintiffs' complaint. The trial court granted the Association's cross motion for summary judgment as to counts 1 and 2 of its counterclaim requiring removal of the staircase and door and entering judgment for the fines accrued through the date of the hearing.

Plaintiffs appeal the trial court's order entered 20 June 2006. The Association cross appeals the failure of the trial court to award reasonable attorneys' fees.

## ANALYSIS

All of plaintiffs' contentions on appeal contest the trial court's granting of summary judgment in favor of the Association; so the following standard of review applies. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." *Harrison v. City of Sanford*, 177 N.C. App. 116, 118, 627 S.E.2d 672, 675, *disc. review denied*, 361 N.C. 166, 639 S.E.2d 649 (2006). On appeal from a grant of summary judgment, this Court reviews the trial court's decision *de novo*. *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 573-74 (1999).

### I—The Association

**[1]** Plaintiffs contend the trial court erred in granting summary judgment in favor of the Association on the basis that (1) the Association was improperly formed, and (2) the membership of the Association conflicted with the allowed membership as defined in the Declaration of Covenants, Conditions and Restrictions ("the Declaration"). We disagree.

"Under a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 18, 591 S.E.2d 870, 881-82 (2004). Plaintiffs obtained title to the lot on or about 16 July 1999, and they conceded in their response to the counterclaim of the Association that they purchased the lot subject to the Declaration. Nothing in the record illustrates that plaintiffs have contested the validity of the Association between 8 December 2000, the date the Association filed its Articles of Incorporation, and 3 March 2005, the date on which the Architectural Committee denied plaintiffs' request. However, there is some evidence in the record that plaintiffs recognized the validity of the Association. For example, based on the accounting records of the management company for Whitehart, plaintiffs have paid their annual assessments consistently since January 2001. In addition, plaintiffs requested design approval from the Architectural Committee for the structural addition. There is also evidence that plaintiff Terry Reidy called the property manager of Whitehart on or about May of 2005 and complained about a neighbor damaging common property. In response to plaintiff Terry Reidy's complaint, the property manager sent a letter to the neighbor stating that complaints have been

received regarding the damage to common property, and that any damage must be fully restored to the prior condition.

Therefore, plaintiffs are estopped from contesting the validity of the Association.

## II—Planned Community Act

[2] Several of plaintiffs' arguments on appeal concern the Planned Community Act ("the Act") which is found in Chapter 47F of the North Carolina General Statutes. The Act is instrumental to the instant case because it provides a basis for the Association to fine plaintiffs. *See* N.C. Gen. Stat. § 47F-3-102(12) (2005). Plaintiffs argue that the Act has no application to this case because the Association is not an association within the meaning of the Act. In addition, plaintiffs argue that applying the Act to the instant case violates the contracts clause, substantive due process, and procedural due process. North Carolina law is clear that there is a presumption in favor of the constitutionality of a legislatively enacted statute. *Vinson v. Chappell*, 3 N.C. App. 348, 350, 164 S.E.2d 631, 632-33 (1968), *aff'd*, 275 N.C. 234, 166 S.E.2d 686 (1969). Unless a statute "clearly, positively and unmistakably appears" to be unconstitutional, then statutes are to be upheld. *Id.* at 350, 164 S.E.2d at 633.

### A. *The Act's Application To the Instant Case*

Plaintiffs contend that the Act has no application to this case because the Association is not a lot owners' association under the Act. We disagree.

Plaintiffs argue the Association was incorporated after the conveyance of the first lot in violation of N.C. Gen. Stat. § 47F-3-101 (2005) which requires a "lot owners' association" to be incorporated no later than the date the first lot in the planned community is conveyed. *Id.* However, the official comment of the original version of the Act provided that the "Act is effective January 1, 1999 and applies in its entirety to all planned communities created on or after that date except as provided . . .," and N.C. Gen. Stat. § 47F-3-101 was not one of the provisions that was noted to be applicable to pre-1 January 1999 communities. N.C. Gen. Stat. § 47F-1-102 (Official Comment) (1999). Subsequently, this portion of the official comment was implemented into the actual language of the statute. N.C. Gen. Stat. § 47F-1-102 (2005). Accordingly, we disagree with plaintiffs.

### B.  Contract Clause

**[3]**  Next, plaintiffs contend the trial court erred in granting summary judgment in favor of the Association because retroactive application of N.C. Gen. Stat. § 47F-3-102(12) and N.C. Gen. Stat. § 47F-3-107.1 (2005), as provided for by N.C. Gen. Stat. § 47F-1-102(c), violates the contract clause of the United States Constitution. We disagree.

N.C. Gen. Stat. § 47F-3-102(12) allows a homeowners' association to impose reasonable fines or suspend privileges or services provided by the association for reasonable periods for violations of the declaration, bylaws, and rules and regulations of the association. *Id.* N.C. Gen. Stat. § 47F-3-107.1 concerns, among other things, the procedures a homeowners association must follow when fining a homeowner pursuant to N.C. Gen. Stat. § 47F-3-102(12). N.C. Gen. Stat. § 47F-3-107.1. Further, N.C. Gen. Stat. § 47F-1-102(c) creates a presumption that both N.C. Gen. Stat. § 47F-3-102(12) and N.C. Gen. Stat. § 47F-3-107.1 applies to all planned communities created in North Carolina before 1 January 1999. N.C. Gen. Stat. § 47F-1-102(c). Plaintiffs argue that retroactive application of the above-referenced statutes substantially changes the contract between the parties, in violation of the contract clause.

"Any law which enlarges, abridges or changes the intention of the parties as indicated by the provisions of a contract necessarily impairs the contract whether the law professes to apply to obligations of the contract or to regulate the remedy for enforcement of the contract." *Adair v. Burial Assoc.*, 284 N.C. 534, 538, 201 S.E.2d 905, 908, *appeal dismissed*, 417 U.S. 927, 41 L. Ed. 2d 231 (1974). However, in *Tabor v. Ward*, 83 N.C. 291, 294-95 (1880), the North Carolina Supreme Court stated:

> It is well settled by a long current of judicial decisions, state and federal, that the legislature of a state may at any time modify the remedy, even take away a common law remedy altogether, without substituting any in its place, if another efficient remedy remains, without impairing the obligation of the contract.

Here, the provision of the Act does not disturb a vested right, impair a binding contract or create a new obligation. The provision merely provides an additional remedy for the enforcement of the Declaration. *See Byrd v. Johnson*, 220 N.C. 184, 188, 16 S.E.2d 843, 846 (1941) (" 'Statutes directed to the enforcement of contracts, or merely providing an additional remedy, or enlarging or making more

efficient an existing remedy, for their enforcement, do not impair the obligation of the contracts.' "). In addition, the Act facilitates the intent of the parties by solidifying the importance of the restrictive covenants. *Bateman v. Sterrett*, 201 N.C. 59, 62, 159 S.E. 14, 16 (1931) ("[A] statute which facilitates the intention of the parties neither impairs the obligation of the contract, nor divests vested rights."). Accordingly, we disagree with plaintiffs.

### C. Substantive Due Process

[4] Plaintiffs contend the trial court erred in granting summary judgment in favor of the Association because retroactive application of N.C. Gen. Stat. § 47F-3-102(12) and N.C. Gen. Stat. § 47F-3-107.1, as provided for by N.C. Gen. Stat. § 47F-1-102(c), violates plaintiffs' substantive due process rights under the United States Constitution and the North Carolina "law of the land" provision. We disagree.

"When confronted with a challenge to a validly adopted statute, the courts must assume that the General Assembly acted within its constitutional limits unless the contrary clearly appears." *Shipman v. N.C. Private Protective Services Bd.*, 82 N.C. App. 441, 443, 346 S.E.2d 295, 296, *appeal dismissed, disc. review denied*, 318 N.C. 509, 349 S.E.2d 866 (1986). "For a statute to be within the limits set by the federal due process clause and the North Carolina 'law of the land' provision, all that is required is that the statute serve a legitimate purpose of state government and be rationally related to the achievement of that purpose." *Id.*

The Act does not violate plaintiffs' substantive due process rights. A legitimate purpose of the Act is to provide a statutory framework for dealing with modern real estate developments, particularly, planned communities. In addition, the individual statutes that form the Act are rationally related to this purpose. Accordingly, we disagree with plaintiffs.

### D. Procedural Due Process

[5] Plaintiffs contend the procedure provided by the Association violated plaintiffs' procedural due process rights under both the Fourteenth Amendment and the North Carolina "law of the land" provision. We disagree.

Our Supreme Court has stated that the "mandate of procedural due process contained in our Constitution and in the Fourteenth Amendment applies only to actions by the government which deprive

individuals of their fundamental rights." *Bank v. Burnette*, 297 N.C. 524, 534, 256 S.E.2d 388, 394 (1979). Procedural due process, as guaranteed by the Fourteenth Amendment " 'restricts governmental actions and decisions which ["]deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." ' " *Clayton v. Branson*, 170 N.C. App. 438, 452, 613 S.E.2d 259, 270, *disc. review denied*, 360 N.C. 174, 625 S.E.2d 785 (2005). In addition, the North Carolina Supreme Court has noted that under the Fourteenth Amendment, "[t]he fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998). "Our state courts generally treat the corresponding section of the N.C. Constitution as the functional equivalent of its federal counterpart." *Clayton*, 170 N.C. App. at 451, 613 S.E.2d at 269.

Here, the procedure provided by the Association did not violate plaintiffs' procedural due process rights. First, we question whether the creation of the statutory framework by the legislature constitutes "state action" for procedural due process purposes. *See Giles v. First Virginia Credit Servs., Inc.*, 149 N.C. App. 89, 104-05, 560 S.E.2d 557, 567 (2002) (determining that the statutory scheme providing for non-judicial repossession of collateral did not constitute state action sufficient to evoke the protection of the due process clause of the Fourteenth Amendment of the United States Constitution). Next, even if the creation of the statutory framework is sufficient state action, the Association did not violate plaintiffs' procedural due process rights. Pursuant to N.C. Gen. Stat. § 47F-3-107.1, "the lot owner charged shall be given notice of the charge, opportunity to be heard and to present evidence, and notice of the decision." *Id.* Thus, the Act comports with procedural due process requirements. Furthermore, the Association provided plaintiffs with notice of the charge, opportunity to be heard at a meeting, opportunity to present evidence and notice of the decision. Accordingly, we disagree with plaintiffs.

### III—Conduct of the Association

**[6], [7]** Plaintiffs' final two contentions concern the conduct of the Association. First, plaintiffs contend the Association's conduct of the hearing violated any contract between the parties. Next, plaintiffs contend that genuine issues of material fact exist as to whether the Association discriminated against plaintiffs in enforcement of the Declaration. We disagree.

Regarding the issue of the conduct of the hearing, plaintiffs' brief contains no citation to any legal authority, and thus will be taken as abandoned. N.C. R. App. P. 28(b)(6). Regarding the contention that genuine issues of material fact exist as to whether the Association discriminated against plaintiffs, plaintiffs have admitted to having erected their staircase and door without the Architectural Committee's approval, and did so in the face of disapproval. Moreover, there does not appear to be any evidence of discrimination on the part of the Association. Accordingly, we disagree with plaintiffs.

## IV—Attorney's Fees

[8] The Association contends the trial court erred in failing to award reasonable attorneys' fees pursuant to N.C. Gen. Stat. § 47F-3-116(e) (2005). We disagree.

Rule 3(a) of the North Carolina Rules of Appellate Procedure provides as follows:

Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal by filing notice of appeal with the clerk of superior court and serving copies thereof upon all other parties within the time prescribed by subdivision (c) of this rule.

N.C. R. App. P. 3(a). Here, the Association filed its "Cross Notice of Appeal" with the Clerk of the Court of Appeals, not with the Clerk of Superior Court of Wake County. "The requirement of timely filing and service of notice of appeal is jurisdictional, and unless the requirements . . . are met, the appeal must be dismissed." *Smith v. Smith*, 43 N.C. App. 338, 339, 258 S.E.2d 833, 835 (1979), *disc. review denied*, 299 N.C. 122, 262 S.E.2d 6 (1980). Although the Association states in its brief that the "Cross Notice of Appeal is on file with the trial court . . . and was in the file with the trial court when counsel for [the Association] reviewed the court file," no cross notice of appeal is in the record that was filed with the trial court in order to give us jurisdiction. *See Blevins v. Town of West Jefferson*, 182 N.C. App. 675, 676-77, 643 S.E.2d 465, 467 (2007) (" 'Without proper notice of appeal, this Court acquires no jurisdiction.' "). (citation omitted). Accordingly, we dismiss the Association's cross-appeal.

Affirmed.

Chief Judge MARTIN and Judge TYSON concur.