IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1281

Filed: 6 September 2016

Johnston County, No. 14 CVD 3722

TATITA M. SANCHEZ, Plaintiff,

v.

COBBLESTONE HOMEOWNERS ASSOCIATION OF CLAYTON, INC., a North Carolina non-profit corporation, Defendant.

Appeal by Defendant from order entered 13 May 2015 by Judge O. Henry Willis, Jr. in District Court, Johnston County. Heard in the Court of Appeals 23 May 2016.

> *No brief for Plaintiff-Appellee.*
>
> *Jordan Price Wall Gray Jones & Carlton, by J. Matthew Waters and Hope Derby Carmichael, for Defendant-Appellant.*

McGEE, Chief Judge.

This appeal is a companion case to four other related cases involving substantially the same facts, COA15-1280, COA15-1282, COA15-1302, and COA15-1303. The plaintiffs in all these cases own homes in a community known as the Cobblestone Subdivision ("the subdivision"). Cobblestone Homeowners Association of Clayton, Inc., a homeowners association ("Defendant Association"), was created in order to maintain certain subdivision common areas and to handle the financial requirements of said management. The common areas relevant to this appeal were a pool and tennis courts, which were regulated and maintained by Defendant

Association, and which were, pursuant to Defendant Association's covenants, allegedly open to all residents of the subdivision who paid the regular homeowners association fees or dues ("the dues").

Tatita Sanchez ("Plaintiff") owned a home ("the property") in the subdivision, and was regularly paying dues Defendant Association assessed until she received a letter on or about 30 July 2014 from the then counsel for Defendant Association. In that letter, Defendant Association informed Plaintiff that, as a result of an earlier mistake, Plaintiff and certain other homeowners[1] in the subdivision were not members of Defendant Association. The letter further informed Plaintiff and similarly situated homeowners that, if they wanted to continue enjoying the pool, tennis courts and other benefits and responsibilities of membership in Defendant Association, they would have to execute a "Supplemental Declaration" to bring themselves and their properties within Defendant Association's authority, and continue to pay the dues.

Plaintiff decided not to join Defendant Association, and requested return of the dues she had been erroneously charged over the years. Defendant Association refused to reimburse Plaintiff for dues already paid, so Plaintiff filed a complaint in small claims court on 31 October 2014, seeking reimbursement. The magistrate in small claims court ruled in favor of Plaintiff by judgment entered 1 December 2014,

---

[1] Including Plaintiffs in the companion cases.

and Defendant Association appealed to district court. Plaintiff's action was heard on 20 April 2015, and the trial court again ruled in favor of Plaintiff by order entered 13 May 2015. Defendant Association appeals.

## I. Standard of Review

This matter was decided by the trial court sitting without a jury.

> "[W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts."
>
> . . . . The trial court's conclusions of law, by contrast, are reviewable *de novo*.

*Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., Inc.*, 226 N.C. App. 483, 487, 742 S.E.2d 555, 559 (2013) (citations omitted). Because Defendant Association does not contest any of the trial court's findings of fact in this matter, they are binding on appeal. *Id.* at 489, 742 S.E.2d at 560. Our review is therefore limited to determining whether the trial court's findings of fact support its conclusions of law. *Id.* at 487, 742 S.E.2d at 559. Our review is further limited to those arguments Defendant Association brings forth on appeal. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. App. R. 28(b)(6) (2016).

## II. Analysis

On appeal, Defendant Association contends that "the trial court erred as a matter of law in concluding that [Plaintiff] was entitled to a return of assessments paid in the amount of $4,000.00." We disagree.

Defendant Association's contention is based upon two specific arguments: (1) "The trial court erred in concluding that no contract existed between [Plaintiff] and [Defendant Association] given the facts established an implied in fact contract existed between the parties[,]" and (2) "the trial court erred in failing to conclude that [Plaintiff] was estopped from denying the obligation to pay assessments to [Defendant Association.]" We limit our review to these two specific arguments, and address each argument in turn.

## A. *Contract Implied in Fact*

Defendant Association first argues "the trial court erred in concluding that no contract existed between [Plaintiff] and [Defendant Association] given the facts established an implied in fact contract existed between the parties." We disagree.

Though somewhat couched in terms of "unjust enrichment," the argument made by Defendant Association is actually restricted to the presence or absence of a contract implied in fact that would have bound Plaintiff to pay the dues. Defendant Association put its argument to this Court in the following manner:

> Where the facts establish that [Plaintiff] received benefits
> from [Defendant Association], and [Plaintiff] had clear
> knowledge of such benefits and services being provided by
> [Defendant Association], an implied in fact contract exists

between [Plaintiff] and [Defendant Association]. If the evidence demonstrates that [Plaintiff] consciously accepted the benefits and services provided by [Defendant Association], the trial court cannot conclude that [Plaintiff] unjustly enriched [Defendant Association] by paying [the dues]. (Citation omitted).[2]

At trial Defendant Association argued, *inter alia*, that, because there existed a contract implied in fact between the parties, the trial court could not base any remedy upon the theory of unjust enrichment. Unjust enrichment may be found when there exists a contract implied in *law*, and recovery based upon unjust enrichment is improper when an actual contract – such as a contract implied in *fact* – exists.[3]

> *Quantum meruit* is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment. It operates as an equitable remedy based upon a quasi contract or a contract implied in law. "A quasi contract or a contract implied in law is not a contract." An implied [in law] contract is not based on an actual agreement, and *quantum meruit* is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment.

---

[2] The dissenting opinion references a quote found in the "Standard of Review" section of Defendant Association's argument: "'The findings of fact in this matter simply do not support the trial court's conclusion of law that [Plaintiff's] payment of assessments to [Defendant Association] unjustly enriched [Defendant Association].'" Though Defendant Association does make this statement in its brief, it does not cite any law laying out the elements of unjust enrichment in its brief, and does not make any direct argument that Plaintiff failed to satisfy her burden of presenting evidence in support of all the required elements. This is because Defendant Association's argument does not depend on whether the elements of unjust enrichment were established.

[3] "Although the terms of an implied in fact contract may not be expressed in words, or at least not fully in words, the legal effect of an implied in fact contract is the same as that of an express contract in that it too is considered a 'real' contract or genuine agreement between the parties." *Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 36, 604 S.E.2d 327, 333 (2004).

*Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414–15 (1998) (citations omitted). In fact, the mere existence of a contract implied in law would make any consideration of the equitable remedy of unjust enrichment improper. *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988) (citation omitted) ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract [in law].").[4]

Our review of this argument is entirely limited to whether or not a contract implied in fact existed between Plaintiff and Defendant Association. If such a contract existed, Plaintiff was thereby obligated to pay the dues, and the trial court's order should be reversed. If no such contract existed, the trial court should be affirmed because Defendant Association makes no further argument on appeal.[5]

This Court has stated:

> [A] contract implied in fact . . . arises where the intention
> of the parties is not expressed, but an agreement in fact,
> creating an obligation is implied or presumed from their

---

[4] In *Lake Toxaway*, discussed in detail below, this Court held that an implied in fact contract existed which obligated the defendant to pay property maintenance fees. This Court further held that absent payment of those fees, the defendant would be unjustly enriched. Having held that a contract existed between the parties, the additional holding related to unjust enrichment was legally incorrect unless viewed as an alternative holding should its finding that a contract implied in fact existed be overturned. *See Ellis Jones, Inc. v. W. Waterproofing Co.*, 66 N.C. App. 641, 646–47, 312 S.E.2d 215, 218–19 (1984). We view these holdings as alternative holdings. Further, in *Miles*, also discussed in detail below, though the plaintiffs argued that there was "insufficient evidence of unjust enrichment for the court to grant a directed verdict in favor of [the] defendant under the theory of an implied contract[,]" this Court determined that the implied contract was one of fact, not law, and therefore damages were based upon breach of that contract, not unjust enrichment. *Miles*, 167 N.C. App. at 34, 37, 604 S.E.2d at 332, 34.

[5] Excepting Defendant Association's argument concerning estoppel, which we consider below.

acts[.] With regard to contracts implied in fact, . . . one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance.

*Lake Toxaway*, 226 N.C. App. at 488, 742 S.E.2d at 560 (citation omitted). Defendant Association contends that the actions of Plaintiff and Defendant Association created a contract implied in fact for the payment of the dues in exchange for the benefits of membership in Defendant Association.

The trial court made the following relevant findings of fact and conclusions of law:

> 3. At or about the time that [P]laintiff acquired the property, [P]laintiff was informed and believed that said property was subject to said covenants and that the property was a part of and subject to the rules of [D]efendant [Association].
>
> 4. In accordance with the rules and covenants, Plaintiff paid periodic dues . . . to [D]efendant [Association] from at or about the time Plaintiff was notified of said [dues] until approximately July 30, 2014.
>
> 5. By letter from the attorney for the Defendant [Association] dated July 30, 2014, [P]laintiff was notified that the property was not and had never been subject to the covenants. The requirement that the aforesaid periodic [dues] be paid was a condition of the covenants.
>
> 6. Plaintiff rarely, if ever, used the tennis courts or swimming pool, which were the main two amenities offered by [D]efendant [Association].
>
> 7. Plaintiff, without legal obligation has paid to [D]efendant [Association] periodic [dues] payments in the total sum of $4,000.00.

8. Plaintiff was not aware of nor had any reasonable way of knowing that there was no legal obligation to pay periodic dues . . . until [P]laintiff received the letter referred to in paragraph 5 above.

9. Defendant [Association] had no legal right to require or receive payments from [P]laintiff.[6]

CONCLUSIONS OF LAW

. . . .

3. No contract or other legal obligation existed between the parties as would require Plaintiff to pay periodic dues . . . to Defendant [Association].

4. Plaintiff's payments to defendant resulted in [D]efendant [Association] being unjustly enriched in the total amount of the payments made.

As Defendant Association does not challenge the findings of fact, nor argue that the trial court should have made additional findings of fact, we restrict out analysis to whether those findings support the trial court's conclusion that no contract existed between Plaintiff and Defendant Association requiring payment of the dues. *Lake Toxaway*, 226 N.C. App. at 489, 742 S.E.2d at 560. The findings establish the following: (1) Plaintiff was informed that the property was subject to

---

[6] The findings of fact include no reference to Plaintiff attending a homeowner's meeting, being provided with a key to the pool, nor that she called Defendant Association on occasion concerning homeowner's issues. In its brief, Defendant Association did improperly attempt to argue that Plaintiff contacted Defendant Association regarding a homeowner's issue. We restrict our review to those facts actually found as fact in the trial court's order.

covenants requiring her to pay periodic dues; (2) Plaintiff was in fact not obligated to pay the dues, and did not have any reason to know she was not legally obligated to pay the dues until informed pursuant to the 30 July 2014 letter from Defendant Association; (3) based upon Defendant Association's erroneous assertions and requests, Plaintiff paid $4,000.00 to Defendant Association as "dues;" and (4) Plaintiff "rarely, if ever, used the tennis courts or swimming pool, which were the main two amenities offered by [D]efendant [Association]."

Defendant Association argues that this Court's opinions in *Lake Toxaway* and *Miles* require that we find a contract implied in fact existed between Plaintiff and Defendant Association. In *Lake Toxaway*, developer Lake Toxaway Company ("LTC") developed certain real property ("the development") which included a man-made lake ("the lake") and individual building lots. *Lake Toxaway*, 226 N.C. App. at 485-86, 742 S.E.2d at 558. In 2000, the defendant purchased a lot ("the lot"), located within the development. *Id*. at 485, 742 S.E.2d at 558. Access to the lake was granted by deed to certain property owners within the development, but LTC contended that lake privileges were not specifically granted appurtenant to the lot. *Id*. at 486, 742 S.E.2d at 558. The plaintiff was the property owners association for the development. *Id*. The plaintiff and LTC entered into an agreement in December 2003 whereby the plaintiff became responsible for maintaining certain common areas within the development, including the lake and the rights-of-way for the private roads that

provided access to the individual parcels of property in the development, including the lot. *Id.* The plaintiff delivered an invoice to the defendant in 2008, demanding the defendant pay an amount representing its *pro-rata* share of the costs of maintaining the roads and the lake for the 2008-09 fiscal year. *Id.* The defendant refused to pay, and the plaintiff initiated an action to determine the rights and obligations of the parties. *Id.* The trial court ruled that a contract implied in fact had been created by the actions of the plaintiff and the defendant. *Id.* at 487, 742 S.E.2d at 559.

Upon review of the trial court's ruling, this Court noted: "It is uncontested that plaintiff's upkeep, repair, and maintenance of the dam, Lake Toxaway, roads, and common areas have conferred a measurable benefit on defendant." *Lake Toxaway*, 226 N.C. App. at 491, 742 S.E.2d at 561. This Court then held:

> Since August 1965, when [the lot] was first deeded by LTC, subsequent owners of the [lot,] including defendant, have used [the lake] continuously for boating and other recreational purposes. *See Snyder*, 300 N.C. at 218, 266 S.E.2d at 602 (stating that "[a]cceptance by conduct is a valid acceptance"). [The d]efendant has also used the private roads, containing multiple points of access, within [the development]. [The d]efendant benefits from having the availability of well-maintained and secured private roads to and from the [lot] and for travel within [the development], in addition to a well-maintained and secure [lake] and dam.
>
> We agree with the trial court that:
>
>> [w]ith knowledge of the services provided by the

> [p]laintiff in maintaining and managing the operations and care of the private roads, roadsides, and [the lake], [the d]efendant agreed by its conduct . . . in using or claiming the right to use the private roads and lake so maintained and managed by the [p]laintiff to pay for the maintenance, repair and upkeep of the roads, roadsides, and lake.
>
> Because the uncontested findings of fact support the trial court's conclusion that implicit in [the] defendant's acceptance of the benefits of using the roads and the lake, was an agreement to pay for the upkeep, maintenance and repair of the roads and lake. Therefore, based on the record before us, we hold that a contract implied in fact existed between the parties.

*Id.* at 489-90, 742 S.E.2d at 560-61 (citation omitted). The ruling in *Lake Toxaway* was thus based upon the "defendant's *acceptance* of the benefits of *using* the roads and the lake," and other amenities, *Id.* at 490, 742 S.E.2d at 561 (emphasis added), not upon the mere existence of those benefits.

In *Miles*, the covenants of the defendant homeowner's association, Carolina Forest Association ("CFA"), of a subdivision ("Carolina Forest") required all real property owners in Carolina Forest to pay association fees for the purposes of maintenance and upkeep of common roads and recreation areas. *Miles*, 167 N.C. App. at 29, 604 S.E.2d at 329. The covenants included a clause whereby the covenants would expire on 1 January 1990. CFA believed that the covenants could be extended if the owners of two-thirds of Carolina Forest lots agreed in writing to do so. *Id.* at 29-30, 604 S.E.2d at 329. The owners of just over two-thirds of Carolina Forest lots

did agree to extend the covenants, and all the plaintiff lot owners continued to pay the maintenance fees until at least 1997. *Id.* at 30, 604 S.E.2d at 329. In 1998, the plaintiffs filed an action requesting the trial court rule that they were not obligated to pay the maintenance fees based upon an argument that the 1990 "amendment" to the covenants did not bind them. *Id.* at 31, 604 S.E.2d at 329-30. The trial court ultimately determined there existed a contract implied in fact based upon the benefits the plaintiffs' had received. *Id.* at 31, 604 S.E.2d at 330. This Court held:

> Plaintiffs were assessed specific fees for benefits to their unimproved properties. These benefits protected both the access to and the value of their properties, by way of maintaining private roads, recreational facilities, a pool, a guard station, and an administrative office. The record shows that plaintiffs were on clear notice that these benefits were being incurred: Approximately half of them actually voted for the amendments to declaration No. 10 as recorded in 1990, which included consent to pay the assessment fees for the exact benefits at issue in this case. All of the plaintiffs had paid some or all of the fees and assessments up until 1997 and 1998, and were incurring the benefit from the improvements funded by such payments. This conduct is consistent with the existence of a contract implied in fact, and plaintiffs' attempt to stop payment on these known benefits, without more, is tantamount to breach of that contract.

*Id.* at 37, 604 S.E.2d at 333-34. Unlike in the present case, the plaintiffs in *Miles* continued to pay the contested fees *after* they were aware of the events which brought

the validity of those fees into question.[7]  This act of continued payment strongly suggested that the plaintiffs recognized they were receiving a benefit in return for those payments, even if they disputed that the extension of the covenants applied to them.  In the present case, Plaintiff immediately ceased paying the association fees once Defendant Association informed her that she was under no legal obligation to continue doing so.

Further, in both *Lake Toxaway* and *Miles*, the trial court ruled that the property owners directly benefitted by the actions of the relevant homeowners associations in maintaining roadways and other common areas.  As an obvious example, the property owners in those two cases could not access their properties in any meaningful manner absent the roadways maintained through association fees.[8]  For this reason, in both cases this Court held that the trial court had not erred in finding the existence of a contract implied in fact.  However, in the present case, the trial court ruled that Plaintiff "rarely, if ever" used the "main amenities" maintained by the association dues collected by Defendant Association.[9]  The trial court did not

---

[7] In *Miles*, the plaintiffs continued to pay association fees after 1 January 1990, the expiration date of the covenants absent amendment.  If the plaintiffs believed the amendment to the covenants did not obligate them to pay association fees after 1 January 1990, they could have contested their obligations at that time.

[8] There is no evidence, nor finding of fact, that the dues in the present case went toward maintenance of the subdivision roads or any other common area necessary for Plaintiff to enjoy the property.

[9] We note that in companion appeal COA15-1282 the trial court found that Plaintiff Frank Christopher and his family "never used" the pool and tennis courts, and that he was not benefitted by Defendant Association.

find as fact that Plaintiff benefitted in any other manner from services rendered by Defendant Association. On these facts, we hold that the trial court did not err in concluding that no contract implied in fact had been created between Plaintiff and Defendant Association.

We further note that if a contract had existed between Plaintiff and Defendant Association, Defendant Association would also have been bound by that contract. However, by its 30 July 2014 letter to Plaintiff, Defendant Association, through counsel, informed Plaintiff that the property was "not subject to [Defendant Association's] declaration[.]" Defendant Association informed Plaintiff that, in order to become a member of Defendant Association and be allowed access to the pool or tennis courts, Plaintiff would be required to execute a "'Supplemental Declaration' . . . where [Plaintiff] agree[d] to be subject to the terms and provisions of [Defendant Association.]" Had there been an enforceable implied in fact contract between Plaintiff and Defendant Association, Defendant Association would not have been able to deny Plaintiff the amenities provided by [Defendant Association] regardless of whether Plaintiff executed any "supplemental declaration." Defendant Association's argument seems to be that there was no contract enforceable by Plaintiff, but that there was a contract enforceable by Defendant Association.

This Court is not called upon to make an independent determination of whether Defendant Association was unjustly enriched; we are called upon to

determine whether Defendant Association's arguments on appeal have merit. It is not the job of this Court to "create an appeal for" Defendant Association. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005).

Defendant Association bases its argument on cases in which this Court found, by the actions of the parties involved, the mutual agreement necessary to form a contract implied in fact. Specifically, this Court in *Lake Toxaway* found that "the plaintiffs received benefits to their properties and the plaintiffs were on clear notice that these benefits were being incurred[.]" *Lake Toxaway*, 226 N.C. App. at 490, 742 S.E.2d at 560. "'Whether mutual assent is established and whether a contract was intended between parties *are questions for the trier of fact*.'" *Lake Toxaway*, 226 N.C. App. at 488, 742 S.E.2d at 560 (emphasis added) (citing *Miles*, 167 N.C. App. at 37, 604 S.E.2d at 333–34). The only "benefit" found by the trial court in the present case was that Plaintiff "rarely, if ever, used the tennis courts or swimming pool[.]"[10] We can only conclude that the trial court determined that this "benefit" was insufficient to establish mutual assent between Plaintiff and Defendant Association, and thus no contract between the parties was intended. This was the trial court's determination to make. *Id.* Defendant Association, by its own actions upon discovering Plaintiff's

---

[10] The dissenting opinion points to evidence indicating that Plaintiff used the pool "on occasion." However, our job is not to find facts based upon the evidence presented at trial, it is to apply the law to the facts found by the trial court based upon that evidence. We note that in four of the five companion cases, including the present case, the trial court used identical language: "Plaintiff rarely, if ever, used the tennis courts or swimming pool[.]" In the fifth companion case, COA15-1282 *Christopher*, the trial court found as fact that Plaintiff Christopher never used these amenities.

property was not subject to its covenants, indicated that *it* did not believe any contract existed. Had a contract existed, Defendant Association could not have denied Plaintiff access to any of its benefits, so long as Plaintiff continued to pay dues, regardless of whether Plaintiff executed the "supplemental declaration" to bring her and her property within Defendant Association's authority. However, Defendant Association made continued availability of access to its benefits contingent upon Plaintiff executing the "supplemental declaration."

In addition, we are not persuaded by the dissenting opinion's analogy of the facts before us to membership in a health club. When someone joins a health club, that person *executes a contract* requiring fees be paid in return for access to certain facilities. In the present case, we are called upon to *determine whether any such contract existed* between Plaintiff and Defendant Association. It is uncontested that those homeowners who *were* contractually obligated to pay dues to Defendant Association were so obligated whether or not they took advantage of any of Defendant Association's benefits.

Assuming *arguendo* some of the trial court's findings are in fact conclusions, as the dissenting opinion contends, we do not see how our analysis would change. Importantly, whether a finding or a conclusion, it is the duty of Defendant Association, as the appellant, and not the duty of this Court, to challenge findings and conclusions, and make corresponding arguments on appeal. It is not the job of

this Court to "create an appeal for" Defendant Association. *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). Defendant Association does *not* argue that the trial court erred in either finding *or* concluding that "Plaintiff was not aware of nor had any reasonable way of knowing that there was no legal obligation to pay periodic dues or association fees until [P]laintiff received the letter" dated 30 July 2014.[11] Defendant Association does *not* argue that Plaintiff was charged with notice as a matter of law through her chain of title that she was not required to pay the dues. Defendant Association makes no mention of, much less argument concerning, the chain of title to Plaintiff's property. Any such arguments have therefore been abandoned. "It is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein. Th[ese] [arguments are] deemed abandoned by virtue of N.C. R. App. P. 28(b)(6) (2005)." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005). We are not called upon to determine the equities involved in this case, we are called upon to render a legal opinion on the issue of whether there existed between Plaintiff and Defendant Association a contract implied in fact that obligated Plaintiff to pay the dues.

The dissenting opinion would hold that *access* to benefits alone is sufficient to meet the requirements set forth in *Lake Toxaway* and *Miles*, irrespective of whether

---

[11] We note that this is not a conclusion by the trial court concerning Plaintiff's legal obligation to pay, it is a finding related to Plaintiff's understanding of what her obligations were.

those available benefits were actually enjoyed. We believe the law requires something more.

## B. *Estoppel*

In Defendant Association's second argument, it contends the trial court erred in "failing to conclude that [Plaintiff] was estopped from denying the obligation to pay assessments[.]" We disagree.

Defendant Association cites to this Court's opinion in *Reidy v. Whitehart Ass'n*, 185 N.C. App. 76, 648 S.E.2d 265 (2007), for the proposition that Plaintiff should be equitably estopped from denying

> the validity of [Defendant Association], at least until July 2014. [Plaintiff] accepted membership within [Defendant Association] at the closing of the purchase of her home and paid her first assessments then. . . . .[12] [Plaintiff] at all times had the right to enter and use the pool and tennis courts, and used the pool on one occasion. [Plaintiff] paid quarterly assessments as she believed she was required to do under the covenants and as a member of [Defendant Association], without objection.

As this Court stated in *Reidy*: "'Under a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument.'" *Reidy*, 185 N.C. App. at 80, 648 S.E.2d at 268-69

---

[12] Defendant Association argues certain alleged facts that are not included in the findings of fact for the 13 May 2015 order. Our review is limited to the facts as found by the trial court in its order. *Lake Toxaway*, 226 N.C. App. at 489, 742 S.E.2d at 560.

(citation omitted). The only potential benefit "accepted" by Plaintiff and found as fact by the trial court was that "Plaintiff rarely, if ever, used the tennis courts or swimming pool[.]" We hold the trial court did not err in failing to find Plaintiff was estopped from accepting the validity of "Defendant Association" or the validity of any "obligation to pay assessments to [Defendant Association.]"

AFFIRMED.

Judge HUNTER, JR. concurs.

Judge DILLON dissents with separate opinion.

DILLON, Judge, dissenting.

I do not believe that the trial court's findings support its conclusion that the HOA was unjustly enriched by its receipt of dues from Homeowner from 2002-2014. Rather, as the HOA argues, the findings support a conclusion that the parties had a contract, implied-in-fact, whereby the parties agreed – as evidenced by their conduct – that the HOA would allow Homeowner access to amenities/benefits in return for the dues paid by Homeowner. *See Revels v. Miss Am. Org.*, 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007) ("With regard to contracts implied in fact, . . . one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance.").

As shown by the uncontradicted evidence in the record, the trial court essentially found that (1) Plaintiff ("Homeowner") purchased her home in 2002 believing she would be part of the Defendant homeowners' association (the "HOA"), allowing her access to the HOA amenities in exchange for her payment of dues;[13] (2) Homeowner paid the HOA dues for a number of years; (3) the HOA provided

---

[13] This finding is supported by Homeowner's admission that she believed she would be part of the HOA when she bought her home; that the appraisal ordered by her lender states that the home she was buying included the right to access HOA amenities (swimming pool and tennis courts); and that the HOA accounting reflects dues she paid to the HOA as part of her 2002 closing.

Homeowner access to amenities;[14] (4) in 2014, the HOA sent Homeowner a letter which informed Homeowner that the HOA had learned that Homeowner's home was not included as part of the recorded HOA declarations, but that the HOA was willing to execute the necessary paperwork for filing to include her home in the declarations.[15]

I do not agree with the majority that the trial court's finding that Homeowner "rarely, if ever" used the HOA amenities has any bearing: The implied-in-fact contract was that Homeowner was paying for *access* to the HOA amenities; *the actual number of times* Homeowner took advantage of her right of access is not relevant.[16] The trial court essentially found that Homeowner was provided this benefit of access, stating that the HOA provided a swimming pool and tennis courts. *See Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 37, 604 S.E.2d 327, 333-34 (2004) (holding that an implied-in-fact contract existed where plaintiffs, who were lot owners in a subdivision, received benefits to their properties and that plaintiffs were on notice that these benefits were being incurred).[17] The effect of the presence of an implied-

---

[14] This finding is supported by Homeowner's admission that the HOA provided her with a key to the HOA pool; that she used it on occasion (though not often); and that she attended at least one HOA meeting.

[15] The letter identified in the trial court's finding is part of the record.

[16] The trial court's "rarely, if ever," phrase is imprecise. The record, however, is uncontradicted. Homeowner admitted that the HOA provided her with a key to the pool; that she did use the pool on a few occasions; that she did call the HOA on occasions about HOA issues; and that she attended at least one HOA meeting.

[17] I note that the HOA also argues "estoppel." I agree that *alternatively* Homeowner is estopped from claiming a refund of her dues. The findings showed that she acted as if she were a member of the HOA and had access to the HOA amenities.

in-fact contract, here, is similar to an express contract to join a health club: The dues are earned by the club whether the member uses the facilities thirty times each month, or never. Accordingly, I respectfully dissent.

While I agree with the majority that the HOA is bound by the trial court's *findings*, I note that many of the statements designated as "findings" are actually mislabeled conclusions of law. For instance, the trial court's statement that the HOA "had no legal right to require or receive payments from [Homeowner]" is clearly a legal conclusion.

Also, the trial court's statement that "[Homeowner] … had [no] reasonable way of knowing that there was no legal obligation" to pay assessments is a conclusion of law. Whether Homeowner had a *legal obligation* to pay dues is a question of law. And the statement that Homeowner had no reasonable way of knowing that her home was not part of the HOA declaration is incorrect *as a matter of law*. Specifically, our Supreme Court has long recognized the bedrock principle that, as a matter of law, "a purchaser [of real estate] is charged with notice of the contents of each recorded instrument constituting a link in [her] chain of title and is put on notice of any fact or circumstance affecting [her] title which any such instrument would reasonably disclose." *Randle v. Grady*, 224 N.C. 651, 656, 32 S.E.2d 20, 22 (1944). *See also Hughes v. N.C. State Highway*, 275 N.C. 121, 130, 165 S.E.2d 321, 327 (1969); *Turner v. Glenn*, 220 N.C. 620, 625, 18 S.E.2d 197, 201 (1942); *Holmes v. Holmes*, 86 N.C.

3

205, 209 (1882); *Harborgate Prop. Owners. Ass'n v. Mt. Lake Shore*, 145 N.C. App. 290, 293-94, 551 S.E.2d 207, 210 (2001).[18]

Finally, I note that the HOA states in its brief that "[t]he findings of fact in this matter simply do not support the trial court's conclusion of law that [Homeowner's] payment of assessments to [the HOA] unjustly enriched [the HOA]." Assuming that this statement is sufficient to preserve our consideration beyond the HOA's arguments concerning an implied-in-fact contract and estoppel, I note that the Supreme Court has held that an unjust enrichment occurs where a party to a contract which is technically unenforceable "expends money as contemplated by the contract, and the other party to the contract consciously receives or accepts the benefits thereof and then fails or refuses to perform his part of the special contract[.]" *Wells v. Foreman*, 236 N.C. 351, 354, 72 S.E.2d 765, 767 (1952). Here, Homeowner did expend money. The trial court's findings, however, also reveal that the HOA did not fail or refuse to perform its part of the agreement, but in fact recognized Homeowner as a member of the HOA and provided her with full access to its amenities. Therefore, based on *Wells*, the HOA has *not* been unjustly enriched.

---

[18] Any suggestion that the HOA has failed to challenge the mislabeled conclusions of law would be overly technical. Though the HOA may not have referred to the trial court's mislabeled conclusions *expressly*, the HOA's main argument is that the Homeowner *did* have a legal obligation to pay dues, based on a contract, implied-in-fact, in return for the years of access she had to the HOA amenities.